629 So.2d 90 (1993)
Manuel MUNOZ, Petitioner,
v.
STATE of Florida, Respondent.
No. 78900.
Supreme Court of Florida.
October 14, 1993.
Rehearing Denied December 17, 1993.
*91 Alvin L. Peters of McCauley & Peters, Panama City, for petitioner.
Robert A. Butterworth, Atty. Gen. and Laura Rush, Asst. Atty. Gen., Tallahassee, for respondent.
OVERTON, Justice.
This cause is before us to review State v. Munoz, 586 So.2d 515 (Fla. 1st DCA 1991), in which the district court held that section 777.201, Florida Statutes (1987), abolished the objective entrapment test we set forth in Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). The Second District Court of Appeal reached a contrary conclusion in Bowser v. State, 555 So.2d 879 (Fla. 2d DCA 1989), by determining that the objective test in Cruz was still applicable despite the enactment of section 777.201. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We find that, in enacting section 777.201, the legislature did eliminate the objective test in Cruz, but we find that the legislature cannot prohibit the judiciary from objectively reviewing the issue of entrapment to the extent such a review involves the due process clause of article I, section 9, of the Florida Constitution. As to the facts of this case, we do not reach a due process objective evaluation of entrapment because, under the subjective test established by section 777.201, we find that Manuel Munoz was entrapped as a matter of law.

Evolvement of the Entrapment Defense
In order for this Court to properly evaluate the subjective test set forth in section 777.201 and determine whether section 777.201 abolished the objective entrapment test set forth in Cruz, it is necessary to examine the evolvement of the entrapment defense under both federal and Florida law.

Federal Cases
The defense of entrapment was first recognized by the United States Supreme Court in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). In that case, Sorrells was charged with illegally possessing and selling whiskey based on the following facts. A prohibition agent, posing as a tourist, befriended Sorrells and gained his confidence through fraud. On several occasions during the course of their "friendship," the agent asked Sorrells to get him some liquor. At first, Sorrells declined. Eventually, however, Sorrells obtained a half-gallon of whiskey for the agent. At trial, conflicting *92 evidence was presented as to whether Sorrells had the reputation of being engaged in the business of obtaining liquor for others, but no evidence was presented that Sorrells had actually ever possessed or sold any intoxicating liquor before the transaction at issue.
Even though the evidence of reputation was in dispute, the trial judge determined that, as a matter of law, there was no entrapment, and Sorrells was subsequently convicted by a jury. The Circuit Court of Appeals affirmed.
On appeal, a majority of the United States Supreme Court acknowledged that law enforcement officials could appropriately provide opportunities for the commission of crimes. However, the Court stated that "[a] different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells, 287 U.S. at 442, 53 S.Ct. at 212. The Court further stated that, when government officials instigate the commission of a crime by "persons otherwise innocent in order to lure them to its commission and to punish them," the defense of entrapment should be available to prohibit such behavior. Id. at 448, 53 S.Ct. at 214. Applying that standard to the facts of Sorrells, the majority concluded that the defense of entrapment should have been available to Sorrells, that the trial court erred in holding as a matter of law that Sorrells was not entrapped, and that the issue should have been submitted to the jury.
The dissenting justices in Sorrells agreed that the entrapment defense should have been available to Sorrells. They believed, however, that the majority erroneously placed the focus of that defense on the predisposition of the defendant to commit the crime, rather than on the conduct of law enforcement personnel. In the dissent, Justice Roberts stated:
The doctrine [of entrapment] rests ... on a fundamental rule of public policy. The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law... .
... .
... To say that such conduct by an official of government is condoned and rendered innocuous by the fact that the defendant had a bad reputation or had previously transgressed is wholly to disregard the reason for refusing the processes of the court to consummate an abhorrent transaction... . The accepted procedure, in effect, pivots conviction in such cases, not on the commission of the crime charged, but on the prior reputation or some former act or acts of the defendant not mentioned in the indictment.
287 U.S. 435, 457-59, 53 S.Ct. 210, 218-19 (Roberts, J., dissenting).
The view of the majority and the view of the dissent subsequently came to be characterized, respectively, as the "subjective" and "objective" views of entrapment.
The Supreme Court next addressed the entrapment defense in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), under the following undisputed facts. A government informant met Sherman at a doctor's office where both the informant and Sherman were being treated for narcotics addiction. After several chance meetings at the doctor's office and pharmacy, they began to discuss mutual experiences regarding their addiction. Eventually, the informant told Sherman he was not responding to treatment and asked Sherman to supply him with a source of drugs. Sherman tried to avoid the issue at first, but, after repeated requests predicated on the informer's presumed suffering, Sherman finally acquiesced. He subsequently provided the informer with drugs on numerous occasions.
At trial, the issue of entrapment was submitted to the jury. Evidence of Sherman's nine-year-old conviction for sale of narcotics and his five-year-old conviction for possession of narcotics was introduced to show his predisposition. Sherman was convicted as charged.
*93 On appeal, the United States Supreme Court reversed the conviction. The Court reaffirmed its earlier adoption of the subjective view of entrapment and expressly rejected the objective view Justice Roberts propounded in Sorrells. However, unlike its holding in Sorrells, the Court held that, even under the subjective view, the circumstances in Sherman required a finding of entrapment as a matter of law.
In writing for the majority, Chief Justice Warren set forth the primary principles of the subjective entrapment defense stating:
[T]he fact that government agents "merely afford opportunities or facilities for the commission of the offense does not" constitute entrapment. Entrapment occurs only when the criminal conduct was "the product of the creative activity" of law-enforcement officials. [Sorrells, 287 U.S. at 441, 451, 53 S.Ct. at 212, 216.] To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. The principles by which the courts are to make this determination were outlined in Sorrells. On the one hand, at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an "appropriate and searching inquiry into his own conduct and predisposition" as bearing on his claim of innocence. [Id. at 451, 53 S.Ct. at 216.]
Sherman, 356 U.S. at 372-73, 78 S.Ct. at 820-21 (alteration in original; emphasis added). In enunciating those principles, the Court effectively approved the decision in United States v. Sherman, 200 F.2d 880, 882-83 (2d Cir.1952), authored by Judge Learned Hand, which succinctly set forth the subjective test as follows:
[I]n [entrapment] cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it.
Applying the rationale of this test to the case in Sherman, the Supreme Court first concluded that the informant had induced Sherman to commit the crime. The Court then determined that neither Sherman's prior record nor his behavior under the facts of the case was sufficient to establish predisposition. Consequently, the Court determined that "entrapment was established as a matter of law." 356 U.S. at 373, 78 S.Ct. at 821. The Court noted that it had reached its conclusion based on the "undisputed testimony of the prosecution's witnesses." Id.
In 1973, the Supreme Court again reaffirmed the subjective entrapment defense in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In Russell, an undercover agent was assigned to locate a laboratory believed to manufacture illicit drugs. The undercover agent met with Russell, advising him that he represented an organization interested in controlling the manufacture and distribution of methamphetamine. He then offered to supply Russell with a difficult to obtain but legal ingredient essential to the manufacture of methamphetamine in return for Russell's supplying him with a specific amount of methamphetamine. The undercover agent provided the ingredient, the drug was produced, and methamphetamine was manufactured at the laboratory. Subsequently, a warrant was obtained and Russell was arrested.
At trial, the issue of entrapment was submitted to the jury and Russell was found guilty as charged. The Circuit Court of Appeals reversed, holding that the conduct of law enforcement officers required a finding of entrapment as a matter of law without regard to Russell's predisposition to commit the crime charged. On appeal to the United States Supreme Court, Russell sought to have the Court reconsider its rejection of the objective standard for the entrapment defense by seeking the Court's approval of the Circuit Court's opinion. For purposes of the appeal, Russell conceded his predisposition to commit the offenses charged, but he sought to have the Court rule that he was entrapped as a matter of law given the intolerable degree of government participation in the criminal enterprise. The majority in Russell rejected *94 this position and once again reaffirmed the subjective standard set forth under Sherman and Sorrells, choosing to focus on a defendant's predisposition to commit the crime, rather than on the conduct of law enforcement officials. Significantly, however, the majority did admit that, at some point, the conduct of law enforcement officials, which is the focus of an objective evaluation of entrapment, might violate due process.[1] The Court stated: "While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed." Russell, 411 U.S. at 431-32, 93 S.Ct. at 1642-43 (citation omitted).
Recently, in Jacobson v. United States, ___ U.S. ___, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), the Supreme Court again addressed its subjective standard of entrapment. In that case, two government agencies encouraged Jacobson to break the law by tempting him to order child pornography through the mail. Using at least five fictitious organizations and a bogus pen pal to entice him into ordering pornography, the agencies targeted Jacobson for over two-and-one-half years before he finally ordered illegal materials. These efforts had been aimed at Jacobson because he had previously ordered pornographic materials. However, at the time he did so, receipt through the mail or possession of pornographic materials was not illegal. At trial, Jacobson pleaded entrapment, and the issue was submitted to the jury. Rejecting the entrapment defense, the jury found him guilty.
On appeal, the United States Supreme Court determined that Jacobson was entrapped as a matter of law. Writing for the majority, Justice White strongly condemned a sting operation that would target an individual when little basis existed for doing so.
Evidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal, for there is a common understanding that most people obey the law even when they disapprove of it... .
... .
... As was explained in Sherman, where entrapment was found as a matter of law, "the government [may not] pla[y] on the weaknesses of an innocent party and beguil[e] him into committing crimes which he otherwise would not have attempted." [356 U.S. at 376, 78 S.Ct. at 822.]
Law enforcement officials go too far when they "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." [Sorrells, 287 U.S. at 442, 53 S.Ct. at 212.]... . When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene.
Jacobson, ___ U.S. at ___-___, 112 S.Ct. at 1542-43.
The Supreme Court's decision in Jacobson emphasized a basic principle of the subjective evaluation of entrapment. Although the dissenting justices in Jacobson asserted that a key question in determining predisposition should be how an accused responded to the government's inducement, the majority rejected this view. The majority explained that the evidence must demonstrate predisposition beyond a reasonable doubt both prior to and independent of the government's acts. In effect, the majority emphasized that predisposition means predisposition. On the evidence presented, the Court found that neither Jacobson's prior behavior nor his response to the agencies' inducements was sufficient or proper to establish predisposition.
An evaluation of these federal entrapment cases clearly reflects that the United States *95 Supreme Court has adopted the subjective standard of entrapment, which focuses on a defendant's predisposition, and that the Court has specifically rejected the objective standard, which focuses on the government's conduct. Nevertheless, as noted in Russell, the United States Supreme Court has indicated that government conduct may at some point become so egregious that a defendant's federal constitutional due process rights could be violated regardless of that defendant's predisposition.
In summary, under the subjective test set forth by the United States Supreme Court, once a defendant raises entrapment as a defense, the defendant has the burden to establish that the government induced the defendant to commit the offense charged. However, once that burden is met, the burden shifts to the government to establish the defendant's predisposition to commit the offense. Sherman. In proving a defendant's predisposition, the government must establish that the defendant was predisposed to commit the offense both prior to and independent of the government's inducement. Jacobson. In doing so, the government may make an appropriate and searching inquiry into the conduct of the defendant and present evidence of the defendant's prior criminal history so long as that history is relevant to the issue of the defendant's predisposition.
Additionally, from these federal cases we also note that the subjective evaluation of an entrapment defense is not always one for a jury. Clearly, when evidence is not conflicting and factual circumstances are not in dispute, the determination of whether a defendant has been entrapped is an issue that rests with the trial judge as a matter of law. Jacobson; Sherman.

Florida Cases
Having examined entrapment under federal law, we now turn to the entrapment defense as it has recently evolved in Florida. In 1985, in State v. Glosson, 462 So.2d 1082 (Fla. 1985), this Court evaluated the issue of entrapment under the due process provision in article I, section 9 of the Florida Constitution. Subsequently, in Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), we specifically rejected the subjective test for entrapment and adopted instead the basic principles of the objective standard of entrapment originally suggested by Justice Roberts in Sorrells. In doing so, we articulated a threshold test for evaluating entrapment as a matter of law. Then, in 1987, the Legislature enacted section 777.201 establishing the subjective test for entrapment.
In reviewing the history of the entrapment defense in Florida, it is important to first examine the constitutional due process issue addressed by this Court in Glosson. In that case, Glosson was charged with trafficking in and conspiring to traffic in cannabis as the result of a reverse-sting operation. The sting was conducted through a paid informant. For the informant's services in assisting in this and other sting operations and subsequent prosecutions, the State agreed to pay the informant ten percent of all civil forfeiture proceedings resulting from any case the informant initiated. Asserting that the State's conduct violated his due process rights, Glosson moved to dismiss the charges. The trial court agreed that the State's conduct was improper as a matter of law and dismissed the charges.
On appeal before this Court, the State argued that the due process defense was not available to a predisposed defendant. We disagreed, stating:
We reject the narrow application of the due process defense found in the federal cases. Based upon the due process provision of article I, section 9 of the Florida Constitution, we agree with [the state supreme courts of Missouri and New York] that governmental misconduct which violates the constitutional due process right of a defendant, regardless of that defendant's predisposition, requires the dismissal of criminal charges.
Glosson, 462 So.2d at 1085 (emphasis added). Under the facts of Glosson, we found the behavior of law enforcement officials in entering into a contingency contract to obtain convictions to be violative of due process under the Florida Constitution. Under that objective philosophy of entrapment, we determined that Glosson was entitled to a dismissal as a matter of law.
*96 Shortly thereafter, we addressed the issue of entrapment in Cruz. In Cruz, law enforcement personnel positioned an officer, who appeared inebriated and who had money hanging visibly from his pocket, as a decoy in a high crime area. Cruz took the money from the decoy's pocket and was arrested as he walked from the scene. The police officers had not been seeking a particular individual nor were they aware of any prior criminal acts by Cruz. Focusing on Cruz's lack of predisposition, the trial court dismissed the charges, finding that Cruz was entrapped as a matter of law.
In reviewing the trial court's decision in Cruz, we stated that the federal subjective test of entrapment generally involved a question of predisposition, i.e., a question of fact for a jury. However, because we found that "[e]ntrapment is a potentially dangerous tool given to police to fight crime," we rejected the federal subjective standard, adopting instead the principles of the objective standard suggested by Justice Roberts in Sorrells. Cruz, 465 So.2d at 519. In adopting this objective standard, we propounded a judicially formulated two-part objective threshold test for determining entrapment as a matter of law. Under that test,
[e]ntrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
465 So.2d at 522. We did not, however, expressly find that such an evaluation was mandated by the due process clause contained in article I, section 9, of the Florida Constitution.
Applying the objective threshold test to the facts in Cruz, we concluded that law enforcement agents had not targeted any specific activity. Consequently, we determined that Cruz had been entrapped as a matter of law.
Subsequent to our decision in Cruz, the Florida Legislature, in 1987, enacted section 777.201, which provides:
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if he proves by a preponderance of the evidence that his criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
The legislative history of that statute clearly reflects that section 777.201 was enacted to reinstate the federal subjective test we rejected in Cruz. See Staff of Fla.H.R.Comm. on Criminal Justice, CS/HB 1467 (1987) Staff Analysis 177 (final June 22, 1987) ("[Section 777.201] overrules the Florida Supreme Court's decision in Cruz v. State, 465 So.2d 516 (Fla. 1985), which held that the objective test of whether law enforcement conduct was impermissible was in the discretion of the trial court.").
After the legislature adopted section 777.201, we again addressed the entrapment defense in State v. Hunter, 586 So.2d 319 (Fla. 1991). However, the offenses at issue in Hunter occurred before section 777.201's enactment. Consequently, section 777.201 was not at issue before this Court and was not discussed in the Hunter opinion. Nevertheless, Hunter is still important in the evolving development of entrapment law in Florida given its application of the Cruz entrapment test and related due process considerations.
In Hunter, Ron Diamond, a convicted drug-trafficker facing fifteen years in prison, sought a sentence reduction or suspension under section 893.135(3), Florida Statutes (1985), which statute allowed the prosecutor to request a sentence reduction for a defendant who provided substantial assistance in obtaining the conviction of others. In seeking to have his sentence reduced, Diamond *97 arranged a deal between David Hunter and Kelly Conklin as follows:
Diamond noticed that another resident of his apartment complex, Kelly Conklin, openly smoked marijuana. Conklin, a twenty-one-year-old recent graduate of an art school, had no prior criminal record. He lived with his pregnant girlfriend and worked for an advertising firm run by David Hunter. Approaching Conklin, Diamond asked for assistance in obtaining drugs, but Conklin could not provide any sources for the drugs that Diamond wanted. Diamond became more insistent and began telephoning Conklin almost daily. Eventually Conklin turned to Hunter, who agreed to help find drugs to sell to Diamond. Hunter sought out a former employee who provided the drugs, but, in doing so, insisted that Hunter, not Conklin, complete the transaction. When Hunter attempted to close the transaction with the police undercover buyers, both he and Conklin were arrested.
Hunter, 586 So.2d at 320 (footnotes omitted). At trial, both Conklin and Hunter presented the defense of entrapment to a jury, but the jury convicted them as charged. The district court of appeal, relying on our decision in Glosson, found a due process violation under article I, section 9, of the Florida Constitution, and directed that the charges against both Conklin and Hunter be dismissed.
On review by this Court, we distinguished the case from our holding in Glosson and rejected the district court's determination that a due process violation had occurred. Moreover, we stated that the due process considerations in Glosson were distinct from the objective test we established in Cruz. See Hunter, 586 So.2d at 321 (holding that the district court should have decided the appeal on the entrapment issue rather than under the due process considerations of Glosson).
In Hunter, in applying our objective test from Cruz, we found that Conklin had established entrapment as a matter of law because the government knew of no ongoing drugtrafficking at the time Diamond approached Conklin. We rejected the application of the Cruz objective test to Hunter's case, however, because Hunter's involvement was voluntary and because Hunter was induced to commit the crime by Conklin rather than by the State or one of its agents. We expressly noted that "defendants cannot raise `due process violations allegedly suffered by third parties.'" 586 So.2d at 322 (quoting United States v. Valdovinos-Valdovinos, 743 F.2d 1436, 1437 (9th Cir.1984), cert. denied, 469 U.S. 1114, 105 S.Ct. 799, 83 L.Ed.2d 791 (1985)).
Finally, we addressed section 777.201 in Herrera v. State, 594 So.2d 275 (Fla. 1992). In that case, defendant Herrera, as a result of a sting operation, was charged with trafficking in cocaine, conspiracy to traffic in cocaine, and obstructing an officer without violence. The sting operation had been initiated by a confidential informant, and Herrera raised entrapment as an affirmative defense. At trial, Herrera requested that the pre-section 777.201 standard jury instruction be given to the jury rather than the jury instruction written to comply with section 777.201.[2] Herrera requested the previous instruction on the grounds that the section 777.201 and the new instruction violated the due process clauses of both the federal and Florida Constitutions because they improperly placed the burden on a defendant to prove that the defendant was entrapped.
On review, we rejected Herrera's argument. We stated that it was not unconstitutional to shift the burden to defendants to prove they were entrapped. Additionally, we stated that lack of predisposition is an essential element of the defense of entrapment as a result of section 777.201's enactment. In rendering this decision, we cited to Sorrells and Russell; however, we did not discuss the subjective, two-step burden of proof test *98 from Sorrells or a trial court's ability to rule as a matter of law on the issue of entrapment. Moreover, at that time, the United States Supreme Court's decision in Jacobson had not been rendered.
District court considerations of this Court's due process pronouncements under the Florida Constitution in Glosson, and this Court's adoption of the objective standard of entrapment in Cruz and our application of that standard in Hunter, in conjunction with the legislative enactment of section 777.201 and our decision in Herrera, have created substantial uncertainty as to the status and application of the entrapment defense in Florida. Obviously, this uncertainty has caused the district courts of appeal to render conflicting decisions regarding the effect of section 777.201.[3] By this opinion, we attempt to set forth specific principles of Florida's entrapment defense to harmonize the law and to ensure uniform application of the entrapment defense in Florida.

Law Enforcement Officials' Conduct and Due Process
The legislature has the authority to statutorily establish entrapment as a defense in this state. However, the legislature cannot enact a statute that overrules a judicially established legal principle enforcing or protecting a federal or Florida constitutional right. Accordingly, section 777.201 cannot overrule a decision of this Court regarding entrapment in any case decided under the due process provision of article I, section 9, of the Florida Constitution.
Although the United States Supreme Court has yet to determine in a case before it that the conduct of law enforcement agents in an entrapment case has violated federal due process rights, it has determined that law enforcement agents' conduct could, in fact, violate such rights. See Russell. On the other hand, as noted above, we have determined, under the circumstances in Glosson, that the conduct of law enforcement agents violated the due process clause of the Florida Constitution. We recently reached a similar conclusion in State v. Williams, 623 So.2d 462 (Fla. 1993). In Williams, we relied on Glosson in finding that the police conduct violated the defendant's due process rights under article I, section 9, regardless of the defendant's predisposition. This was because the conduct engaged in by law enforcement agents, i.e., the manufacture of crack for sale within 1000 feet of a school, was illegal. In making our determination, we noted that defining the limits of due process is difficult because due process is not a technical, fixed concept; rather, it is a general principle of law that prohibits prosecutions brought about by methods offending one's sense of justice. Further, although we stated that we are not unmindful of the problems faced by law enforcement agents in combatting crime, we emphasized that certain conduct would not be tolerated in light of the due process considerations mandated by our constitution. "While we must not tie law enforcement's hands in combatting crime, there are instances where law enforcement's conduct cannot be countenanced and the courts will not permit the government to invoke the judicial process to obtain a conviction." Williams, at 465. Because the legislature cannot abrogate an accused's due process rights, section 777.201 is inapplicable whenever a judge determines as a matter of law that law enforcement personnel have violated an accused's due process rights.

The Elimination of the Cruz Test for Entrapment
Although the legislature may not enact a statute limiting the application of a constitutional right, it may overrule judicially established substantive principles that do not implicate established constitutional rights. Thus, to the extent the objective test for the entrapment defense adopted by this Court in Cruz was not based on due process, the legislature had the authority to overrule that judicially established standard and to establish entrapment as a defense to be evaluated under the subjective test. As we indicated in the Florida cases outlined above, it is the *99 focus on the behavior of law enforcement officials rather than the objective test itself that implicates due process considerations. Consequently, the legislature had the authority to overrule the judicially established objective test set forth in Cruz to the extent that such objective test did not include due process concerns. As such, we find that the specific test set forth in Cruz has been eliminated by section 777.201. Additionally, we find that the subjective test set forth in section 777.201 is the test to be applied on the issue of entrapment in the absence of egregious law enforcement conduct. As noted above, however, in the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9, of the Florida Constitution as in Glosson and Williams.

The Subjective Test for Entrapment under Section 777.201
Given the history of the entrapment defense, we find that the legislature, in establishing a legislatively-created entrapment defense through section 777.201, codified the subjective test delineated by the United States Supreme Court as the means for determining the application of that defense. As indicated under the federal cases discussed above, the application of the subjective test is the test articulated by Judge Hand in Sherman, as further explained by the United States Supreme Court in Jacobson. Three principles arise under this test. The first two involve questions of fact and differing burdens of proof, and the third addresses whether the issue of entrapment must be submitted to the jury or whether the issue can be decided by the judge as a matter of law.
The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is, whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense. On this second question, according to our decision in Herrera, the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt. In rebutting the defendant's evidence of lack of predisposition, the prosecution may make "an appropriate and searching inquiry" into the conduct of the accused and present evidence of the accused's prior criminal history, even though such evidence is normally inadmissible. However, admission of evidence of predisposition is limited to the extent it demonstrates predisposition on the part of the accused both prior to and independent of the government acts. Further, care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement. The United States Supreme Court, in its majority opinion in Jacobson, explained how this type of evidence may properly be used as follows:
Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute. Where the Government has induced an individual to break the law and the defense of entrapment is at issue, as it was in this case, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents.
Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition. *100 Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner  who must be presumed to know the law  had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction.
But that is not what happened here. By the time petitioner finally placed his order, he had already been the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations. Therefore, although he had become predisposed to break the law by May 1987, it is our view that the Government did not prove that this predisposition was independent and not the product of the attention that the Government had directed at petitioner since January 1985.
Jacobson, ___ U.S. at ___, 112 S.Ct. at 1540-41 (citations omitted; footnote omitted). The above quote provides guidance as to when conduct resulting from a sting operation may be used to establish predisposition and as to when using such conduct would be improper.
The third question under the subjective test is whether the entrapment evaluation should be submitted to a jury. Section 777.201 directs that the issue of entrapment be submitted to the trier of fact. Such direction is consistent with the subjective evaluation of entrapment because the two factual issues above ordinarily present questions of disputed facts to be submitted to the jury as the trier of fact. However, if the factual circumstances of a case are not in dispute, if the accused establishes that the government induced the accused to commit the offense charged, and if the State is unable to demonstrate sufficient evidence of predisposition prior to and independent of the government conduct at issue, then the trial judge has the authority to rule on the issue of predisposition as a matter of law because no factual "question of predisposition" is at issue. See, e.g., Jacobson; Sherman. Such a ruling could be proper even when the government presents evidence of prior convictions. Sherman. We reject any construction of section 777.201 that would require such an issue of law to be submitted to a jury. Under the constitution of this state, juries, as the finders of fact, decide factually disputed issues and judges apply the law to the facts as those facts are found by the jury. To construe section 777.201 as mandating that the issue of entrapment is to be submitted to a jury for determination as a matter of law would result in an unconstitutional construction that would violate article I, section 9, of the Florida Constitution. Consequently, we construe section 777.201 as requiring the question of predisposition to be submitted to a jury when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts. In certain instances, however, as illustrated by Sherman and Jacobson, the trial judge and appellate courts clearly have the authority to rule on the issue as a matter of law. To hold otherwise would violate procedural due process.

The Instant Case
Having thus determined the state of the entrapment defense in Florida under section 777.201, we turn to the facts of the instant case.
Manuel Munoz, the owner of "Video Den," was charged with two counts of sale or distribution of harmful materials to a person under 18 years of age, in violation of section 847.012, Florida Statutes (1989). The record reflects that those charges stemmed from the following sequence of events.
The Bay County Sheriff's Office received an anonymous complaint that minors were able to rent X-rated videotapes from a video store known as "Top Banana." In investigating whether minors were able to obtain X-rated videotapes from Top Banana, the sheriff's office decided to spread the investigation to other video stores in the Bay County area that rented X-rated movies. The names of the other video stores selling or renting X-rated videotapes were obtained by searching the Yellow Pages of the local phone book. Consequently, even though Video Den was totally unconnected to Top Banana and even though the sheriff's office had received no complaints regarding Video Den and had no independent knowledge as to whether Video *101 Den was renting X-rated movies to minors, the sheriff's office decided to target Video Den in its investigation.
In conducting its investigation, the sheriff's office obtained a false membership card from Video Den under the fictitious name of Brian Jackson. The membership card reflected that Jackson was thirty-four years old. The sheriff's office also obtained the assistance of a sixteen-year-old girl who had recently been arrested for negotiating the purchase of a pound of marijuana. It is undisputed that the juvenile informant appeared to be at least eighteen years of age.
The Sheriff's office gave the membership card to the juvenile informant and instructed her to rent an X-rated videotape from Video Den, to lie about her age, and to lie about her relationship with Jackson. She was instructed to indicate that she was either the sister or girlfriend of Jackson.
Video Den maintained its X-rated videotapes in a separate room and posted a sign explicitly stating that no person under the age of 18 was allowed to enter the room. On her first trip to Video Den, the juvenile informant obtained an X-rated video from the "adults only" room and presented the false membership card to Munoz at the cash register. In renting the X-rated video, she explained to Munoz that she was Jackson's girlfriend. Approximately two weeks later, she again rented two X-rated movies from Video Den. On the second trip, Munoz asked her age and she lied. She explained that she had walked to the store and had forgotten her driver's license. Additionally, she insisted that she had rented these movies before and again claimed to be either the girlfriend or sister of Jackson. After Munoz allowed the juvenile to rent the videotapes, he was charged with the sale or distribution of harmful materials to a minor.
The trial judge dismissed the charges against Munoz on the basis of entrapment as a matter of law based on the objective entrapment test set forth in Cruz. The district court reversed, holding that the legislature had abolished the objective entrapment test set forth in Cruz through the enactment of section 777.201.
Given the unrefuted facts in this case, we find that we need not address whether the conduct of law enforcement personnel constitutes a due process violation under article I, section 9, because we find that, under the subjective test set forth above, Munoz was the subject of entrapment as a matter of law. First, the undisputed facts clearly establish that law enforcement agents induced Munoz to rent the videotapes to the juvenile. Second, there was no evidence whatsoever of predisposition on Munoz's part prior to and independent of the government inducement. As such, we reject the State's contention that the issue of entrapment in this case should be submitted to a jury.

Conclusion
For the reasons expressed, we find that, through section 777.201, the Legislature established entrapment as a statutory defense to be evaluated under the federal subjective entrapment test and, by such action, eliminated the objective test we announced in Cruz. As such, we disapprove Bowser v. State, 555 So.2d 879 (Fla.2d DCA 1989). We additionally find that section 777.201 neither prohibits the judiciary from objectively reviewing the issue of entrapment to the extent such a review involves the due process clause of article I, section 9, of the Florida Constitution, nor prohibits the judiciary from determining under the subjective test that, in certain circumstances, entrapment has been established as a matter of law. In this case, we find that, under the subjective test, Manuel Munoz was entrapped as a matter of law. Although the district court in this case correctly noted that section 777.201 abolished the objective entrapment test set forth in Cruz, it did not reach the conclusion that Munoz was nevertheless entrapped as a matter of law. Consequently, we quash the decision of the district court and remand this case with the direction that the trial court's order of dismissal be reinstated.
It is so ordered.
BARKETT, C.J., and McDONALD, GRIMES and HARDING, JJ., concur.
*102 KOGAN, J., concurs with an opinion, in which BARKETT, C.J., concurs.
SHAW, J., concurs in result only.
KOGAN, Justice, concurring.
The due-process entrapment defense recognized in Cruz, Glosson, and Hunter essentially is the same as "objective entrapment." Thus, the majority appears to toss "objective entrapment" out the front door but then readmits essentially the same concept into Florida law via the rear entrance, with some minor tinkering as to analysis. Perhaps this Court in future cases will be required to state what analysis now must be used in cases of this type, but I generally agree with the majority's conclusions.
BARKETT, C.J., concurs.
NOTES
[1] In Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), the United States Supreme Court did state that the due process defense would be unavailable to a predisposed defendant. However, that statement in Hampton was made in a plurality opinion in which only three justices joined and, as such, did not undermine the Court's pronouncement in Russell.
[2] Before section 777.201 was enacted, the last paragraph of the standard jury instruction on entrapment read: "On the issue of entrapment, the State must convince you beyond a reasonable doubt that the defendant was not entrapped." After the enactment of section 777.201, the last paragraph of the instruction was changed to read: "On the issue of entrapment, the defendant must prove to you by a preponderance of the evidence that his criminal conduct occurred as the result of entrapment."
[3] To date, at least thirty-one opinions have been released by the district courts interpreting section 777.201, some finding that section 777.201 abolished the test in Cruz, others finding that it did not.