681 So.2d 1206 (1996)
The STATE of Florida, Appellant,
v.
Arthur DAWSON, Appellee.
No. 95-415.
District Court of Appeal of Florida, Third District.
October 30, 1996.
Robert A. Butterworth, Attorney General, and Angelica D. Zayas, Assistant Attorney General, for appellant.
Joel D. Robrish, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
COPE, Judge.
The State appeals an order granting defendant Arthur Dawson's sworn motion to dismiss *1207 pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). The trial court ruled that the defendant had been entrapped as a matter of law. We conclude that this ruling was erroneous and reverse.
In November 1994, defendant was a British tourist who arrived in the Miami International Airport on vacation. With him was his girlfriend, Kristin Spring. Defendant and Spring had a two-day layover before continuing on to Barbados.
At the time of their arrival, the Metro-Dade Police Department Airport Crime Suppression Team was conducting a decoy operation designed to catch luggage thieves. This was being done in response to an increasing number of thefts and tourists crimes occurring within the airport.
The police had created a decoy bag, which was a black soft-sided camera case containing an Olympus 35mm camera and a Nikon 35mm camera. The camera bag had a name tag identifying the owner as follows:
J.A. MENDOZA
P.O. BOX 592175
MIAMI INTL. AIRPORT
MIAMI, FL. 33159
(305) 876-7500
(305) 876-7373
The police placed the decoy bag on a pay telephone shelf in the public telephone bank at Concourse "D." The police took up surveillance positions so that they could observe the decoy bag.
Defendant and Spring were nearby, waiting to purchase their air tickets to Barbados. Spring noticed that a man who had been using the pay telephone had walked away and appeared to have left the decoy bag. Spring approached the man about the bag, but the man indicated the bag did not belong to him.
Defendant asserts that he and Spring were concerned that the bag might contain a bomb. According to the motion, defendant waited fifteen or twenty minutes, then went over to the telephone booth and looked inside the bag.[1] For present purposes we assume that the bag was securely closed and that it was necessary for defendant to unfasten or unzip the bag in order to look inside it.
Defendant saw the two cameras inside the bag. He brought the bag and its contents back to his seat.
Defendant stored some of his luggage inside an airport locker. Defendant and Spring then took their remaining personal items and the decoy bag and went to the airport information booth. They inquired for directions to a car rental agency, but did not inquire regarding lost and found items. Defendant made no attempt to call the owner of the bag even though the name and telephone number were on it.
Defendant rented a car and placed the decoy bag in it. At that time the police approached. When asked about the decoy bag, defendant stated that he had found it abandoned at the airport and was taking it with him.
Defendant was charged with theft. This is a felony charge because the estimated value of the bag and contents was $440. Defendant is gainfully employed in England and has never previously been charged with a crime.
Defendant filed a sworn motion to dismiss under rule 3.190(c)(4), contending that he had been entrapped as a matter of law. The trial court took the view that:
the decoy bag was nothing more than abandoned or lost property at the Airport. As such, the decoy bag does not become the subject of a crime merely because the finder of the bag is not of such moral character and honesty [that] he or she *1208 takes the items to lost and found on the premises but instead keeps the property. This is so even if proper identification is on the items as was the [fact] in the instant case.
The trial court concluded that on these facts, there was entrapment as a matter of law under section 777.201, Florida Statutes (1993), and also that the methods involved here violated the due process clause of article I, section 9, of the Florida Constitution. The court noted that the police operation had been conducted with good intentions, but concluded that defendant had been entrapped. The court entered an order of dismissal, and the state has appealed.
Since 1987, the defense of entrapment has been set forth by section 777.201, Florida Statutes, which provides:
777.201 Entrapment.
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if he proves by a preponderance of the evidence that his criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
The Florida Supreme Court has said that in applying the statute, three questions must be addressed. Munoz v. State, 629 So.2d 90, 99 (Fla.1993).
(1) "The first question ... is whether an agent of the government induced the accused to commit the offense charged." Id. The accused must establish this element by a preponderance of the evidence. Id.
(2) "If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is, whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense." Id. The defendant must initially produce proof on lack of predisposition. Id. If he does so, "the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt." Id.
(3) "The third question ... is whether the entrapment evaluation should be submitted to a jury." Id. at 100. The first two questions ordinarily present factual issues to be decided by the jury, and should be submitted to the jury "when factual issues are in dispute or when reasonable persons could draw different conclusions from the facts." Id. If the material facts are undisputed and reasonable persons could not disagree, then the trial court may rule on the entrapment issue as a matter of law. Id.; State v. Ramos, 632 So.2d 1078, 1079 (Fla. 3d DCA 1994).
Under the facts of the present case, defendant's argument fails at the first step. We do not think it can be said as a matter of law that the government induced the defendant to commit the offense of theft.
In this case, the decoy was a black camera bag which had been left by the pay telephones. We assume for these purposes that the bag was closed and appropriately fastened, so that the contents of the bag were not visible from the outside. The bag had a luggage tag on it, which contained the name, address, and telephone numbers of the owner. No one called the attention of defendant and Spring to the bag, or in any way suggested or invited them to do anything with the bag at all. On their own volition, defendant and Spring approached the bag, opened it, and upon finding that it contained two cameras, decided to keep it. All of this occurred within the passenger area of Miami International Airport, where for various reasons, passengers may leave luggage or bags unattended. We do not think that leaving a closed bag or piece of luggage unattended in the passenger area of the airport terminal *1209 operates as an "inducement" to open the bag and steal it, for purposes of the entrapment law.
The trial court analogized the decoy bag to the undercover operation involved in Cruz v. State, 465 So.2d 516, 517 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), superseded by statute, Munoz v. State, 629 So.2d at 99, 101. In Cruz, an undercover officer pretended to be an intoxicated person leaning against a wall on a street in Tampa. From his rear pocket was protruding a plainly visible $150 in cash. The inducement of the large cash amount was one of the reasons cited in the court's ruling that defendant had been entrapped as a matter of law. Id. at 522.[2] The trial court acknowledged that the Cruz legal test for entrapment does not survive the enactment of section 777.201, but reasoned that even under current entrapment standards, the result in Cruz would be the same today.
Assuming for purposes of discussion that Cruz would still be decided the same way today, the facts of the present case are materially different. In Cruz the inducement was a large cash amount which was readily visible to any passerby. The $150 "enticingly protruding from the back pocket of a person seemingly incapable of noticing its removal, carries with it the `substantial risk that such an offense will be committed by persons other than those who are ready to commit it.'" 465 So.2d at 522 (citation omitted). In the present case, we deal with a closed bag bearing identification, the contents of which could not be known without opening the bag. We cannot agree that the inducement involved in the present case is similar to that of Cruz.
The court was also concerned that this undercover operation was set up in such a way that a bystander would be misled into thinking that the decoy bag was lost or abandoned property. The defendant in this case told the officers he took the bag because he thought it had been abandoned, and in essence, "finders, keepers." Given that this bag had an identification tag on it and was located in an airport lobby where passengers intentionally or unintentionally may leave personal property unattended, we fail to see how there can be any reasonable claim that the decoy bag was abandoned. Conceivably defendant might think that the bag had been inadvertently left at the phone booth by a passenger, but that does not authorize defendant to take it, either as a matter of common sense or as a matter of law.[3]
The trial court ruled alternatively that the police operation in this case constituted a violation of the Florida due process clause, set forth in article I, section 9 of the Florida Constitution. The court concluded that the undercover operation involved egregious law enforcement conduct and constituted entrapment as a matter of law.
*1210 The Florida Supreme Court has said, "[I]n the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9, of the Florida Constitution as in [State v.] Glosson [,462 So.2d 1082 (Fla.1985),] and [State v.] Williams [,623 So.2d 462 (Fla.1993)]." Munoz v. State, 629 So.2d at 99. Where there is no egregious law enforcement conduct, then "section 777.201 is the test to be applied...." Id.
For the reasons already stated, we do not think that the undercover operation can be said to involve egregious law enforcement conduct. We therefore reverse that determination as well.
The order under review is reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Although immaterial to our analysis, neither the state nor the trial court was required to accept the defendant's self-serving statement that he was acting as a personal bomb squad when he opened the camera bag. As a matter of common experience, one who believes that a package contains a bomb usually summons the authorities rather than personally opening it. See Vietinghoff v. Miami Beach Fed. Credit Union, 657 So.2d 1208, 1209 (Fla. 3d DCA 1995) (trier of fact need not accept testimony, inter alia, which is inherently improbable or unreasonable, or opposed to common knowledge); Republic Nat'l Bank of Miami, N.A. v. Roca, 534 So.2d 736, 738 (Fla. 3d DCA 1988) (same).
[2] As an additional reason for finding entrapment the court noted that the "decoy situation did not involve the same modus operandi as any of the unsolved crimes which had occurred in the area." Id. at 517.
[3] Florida law governing lost or abandoned property provides, in part:

705.102 Reporting lost or abandoned property. 
(1) Whenever any person finds any lost or abandoned property, such person shall report the description and location of the property to a law enforcement officer.
(2) The law enforcement officer taking the report shall ascertain whether the person reporting the property wishes to make a claim to it if the rightful owner cannot be identified or located. If the person does wish to make such a claim, he shall deposit with the law enforcement agency a reasonable sum sufficient to cover the agency's cost for transportation, storage, and publication of notice. This sum shall be reimbursed to the finder by the rightful owner should he identify and reclaim the property.
(3) It is unlawful for any person who finds any lost or abandoned property to appropriate the same to his own use or to refuse to deliver the same when required.
(4) Any person who unlawfully appropriates such lost or abandoned property to his own use or refuses to deliver such property when required commits theft as defined in s. 812.014, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
* * * * * *
705.104 Title to lost or abandoned property.
(1) Title to lost or abandoned property is hereby vested in the finder upon the expiration of the 90-day custodial time period specified in s. 705.103(2), provided the notice requirements of s. 705.103 have been met, unless the rightful owner or a lienholder claims the property within that time.