WARNER, C.J.
The state appeals from a trial court’s order dismissing the charges against ap-pellee, Thomas Brown, on the basis of his defense of subjective entrapment. We hold that there were disputed issues of fact precluding the trial court from taking the case away from the jury, which found Brown guilty of tampering with a witness and conspiracy.
Brown was charged with tampering with a witness and conspiracy while acting as an attorney for a criminal defendant in a case in which George Kleinbach was to be a witness. Kleinbach himself was arrested and charged with several burglaries, and his statements to the police formed the basis for a probable cause affidavit which led to the arrest of George Rokos, Klein-bach’s alleged fence. Although Brown represented Kleinbach for a short period of time, Brown withdrew to represent Ro-kos.
After a new lawyer, John Garcia, was appointed to represent Kleinbach, Klein-bach met with police. At that meeting, Kleinbach explained that after he was arrested he called Brown, who was then his *566 attorney, to ascertain what Rokos was doing to help him. Brown later visited Kleinbaeh in jail and inquired as to whether he would be amenable to changing or recanting information previously supplied to the police. At a second meeting with the police, Kleinbaeh stated that Brown had just recently visited him in jail and had asked him how much money he wanted in exchange for altering his testimony.
John Garcia testified that he met with Rokos and Rokos’ lawyer, Willis, who was co-counsel with Brown. During that meeting Rokos told Garcia that he would pay Kleinbaeh for his testimony. Garcia ended the conversation and escorted the pair out of his office. Within two minutes, Brown called Garcia, apologizing for what had occurred. At trial, both Willis and Rokos denied that this conversation ever occurred.
Based upon what Kleinbaeh told the police, they requested that he assist the state by wearing an electronic listening/recording device for future conversations with Brown. Certain statements in a subsequent recording indicate that Brown asked for specific testimony from Kleinbaeh in exchange for money. Brown testified that the money he was referring to in the statements was what was owed to Kleinbaeh by Rokos for work performed around Rokos’ house.
Brown moved to dismiss the charges, claiming that he was entrapped. He also denied that he committed any crime. According to Brown’s explanation, Kleinbaeh orchestrated the allegations of witness tampering because he realized that Brown needed his testimony in defense of Rokos. At the hearing on the motion, Kleinbaeh testified in Brown’s favor. Kleinbaeh admitted that he set Brown up and that he misled the police into believing that Brown had asked Kleinbaeh to give false testimony. However, Kleinbaeh also admitted on cross-examination that Brown specifically told him what Kleinbaeh needed to say when testifying. The trial court deferred ruling on the motion until after the trial.
At trial, the detective on the case testified that after Kleinbaeh told them that Brown asked him to change his testimony in exchange for money, the police requested Kleinbaeh wear a recording device. In exchange for Kleinbach’s testimony, the police talked to the state attorney’s office and convinced them not to habitualize Kleinbaeh on the charges for which he was arrested. Although Kleinbaeh did call Brown once upon the direction of the police, Kleinbaeh also made several other calls which were not initiated or requested by the police.
Kleinbaeh also gave testimony at trial, but changed his story for a third time. He explained that at first he told Brown he had not told the police anything regarding Rokos being his fence. “But there came a point in time when I told T.G. [Brown]. I don’t know what I said to them. I may have said something to them but I’m not changing any testimony until George Ro-kos pays me the money he owes me that I got coming anyway.” Part of one of the conversations was played for the jury in which Kleinbaeh explained to Brown that he was not sure what he told the police regarding Rokos, because he had been on drugs at the time. The following discussion then took place:
Kleinbaeh: But if I did [tell the police that Rokos was my fence], well, fuck it, I’ll just say I never said it.
Brown: That’s all we want you to do at the depo. But I just need a number to tell George what you expect from him in return. I have 500 right now in escrow, and it goes right to your daughter as soon as we’re — the thing’s over.
Thus, Kleinbaeh asserts that at this point Brown was fully aware that he intended to perjure himself.
After the jury found Brown guilty as charged, he renewed his motion to dismiss on entrapment. This time the trial court granted it, finding that Kleinbaeh was an agent of the government, that his efforts induced the activity and conversations with *567 the defendant and created a substantial risk that the defendant may involve himself in criminal activity, and that the only evidence of predisposition was Kleinbaeh’s testimony, “and no reasonable person can put much weight in what Kleinbach has to say, let alone beyond a reasonable doubt.” Relying on Wilson v. State, 577 So.2d 1300 (Fla.1991), for the proposition that Brown could assert the defense of entrapment while at the same time claiming that he had no criminal intent, the court determined that there was no factual dispute and, therefore, the court could decide the issue of entrapment as a matter of law. It thereupon dismissed the charge against appellee.
In Munoz v. State, 629 So.2d 90 (Fla.1993), the supreme court set forth the steps and shifting burden of persuasion involved in the defense of subjective entrapment:
The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged; that is, whether the accused was awaiting any propitious opportunity or was ready and willing, without persuasion, to commit the offense. On this second question, according to our decision in Herrera[v. State, 594 So.2d 275 (Fla.1992)], the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt. In rebutting the defendant’s evidence of lack of predisposition, the prosecution may make “an appropriate and searching inquiry” into the conduct of the accused and present evidence of the accused’s prior criminal history, even though such evidence is normally inadmissible. However, admission of evidence of predisposition is limited to the extent it “demonstrates predisposition on the part of the accused both prior to and independent of the government acts. Further, care must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement.
Id. at 99. While section 777.201(2), Florida Statutes (1997), directs that the issue of entrapment be submitted to the trier of fact, the court concluded that where:
the factual circumstances of a case are not in dispute, if the accused establishes that the government induced the accused to commit the offense charged, and if the State is unable to demonstrate sufficient evidence of predisposition pri- or to and independent of the government conduct at issue, the trial judge has the authority to rule on the issue of predisposition as a matter of law because no factual ‘question of predisposition’ is at issue.
Id. at 100.
We conclude that the trial court erred because on this record there are many factual disputes in the evidence. Indeed, the trial court itself refers to Klein-bach’s testimony as supporting predisposition, but then rejects it as not worthy of belief. However, determining the credibility of witnesses is solely within the province of the jury. See Davis v. State, 703 So.2d 1055, 1060 (Fla.1997), cert. denied, 524 U.S. 930, 118 S.Ct. 2327, 141 L.Ed.2d 701 (1998). In order to come to its conclusion that there were no factual disputes, the trial court had to reject all of Klein-bach’s testimony.
There are also factual disputes with respect to each question asked under the entrapment defense, even whether a government agent induced appellee to commit the crime. From Kleinbach’s testimony it *568 appears that it was Brown who first approached Kleinbach regarding changing his testimony to help Rokos. At the time, Kleinbach had not spoken to the police regarding assisting them in investigating Brown. That testimony is made more credible by attorney Garcia’s testimony that during a conference with Willis, Ro-kos offered to pay for Kleinbach’s testimony. Brown immediately called and apologized for the incident, but a jury might conclude that the haste with which Brown responded indicated that he had foreknowledge of what Rokos intended to do. These conversations occurred prior to Kleinbach’s agreement to help the police.
These initial conversations testified to by Kleinbach, and supported to some degree by Garcia, also show predisposition, as it was Brown who first approached Kleinbach and not the other way around. Furthermore, the taped conversations reveal that Brown readily committed to paying Kleinbach, and he instructed Kleinbach on the specific testimony Rokos needed from him. This could also show a predisposition, because no enticing was necessary. In Munoz, the court cited Jacobson v. United States, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), as providing guidance on when conduct from a sting can be used to establish predisposition:
[government agents may not originate a criminal design, implant in an innocent person’s mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute. Where the Government has induced an individual to break the law and the defense of entrapment is at issue, as it was in this case, the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act pri- or to first being approached by Government agents.
Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate “sting” operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant’s predisposition. Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner — who must be presumed to know the law — had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction.
But that is not what happened here. By the time petitioner finally placed his order, he had already been the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations. Therefore, although he had become predisposed to break the law by May 1987, it is our view that the Government did not prove that this predisposition was independent and not the product of the attention that the Government had directed at petitioner since January 1985.
Jacobson, 503 U.S. at 548-50, 112 S.Ct. 1535 (citations and footnote omitted). In the instant case, in the very first recorded conversation, appellee makes reference that something was being placed in escrow and would be delivered to Kleinbach’s daughter once Kleinbach gave the right testimony in a deposition. While appellee contends that this conversation referred to money Rokos owed to Kleinbach, the jury was free to reject this claim. Subsequent conversations revealed that appellee talked about even larger amounts of money for his cooperation. As in Jacobson, his ready commission of the criminal act demonstrates his predisposition to commit the crime.
There were substantial factual disputes in the record. While the testimony of Kleinbach is contradictory and we might *569 share the trial court’s opinion that it lacks credibility, that is for the jury to decide. The jury was instructed on the defense of entrapment and chose to find appellee guilty. Based on this record we conclude that entrapment was not proven as a matter of law, and the jury verdict should be reinstated.
Reversed.
STONE and POLEN, JJ., concur.