841 So.2d 600 (2003)
Edward MARREEL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-1892.
District Court of Appeal of Florida, Fourth District.
April 2, 2003.
*601 David F. Pleasanton of David F. Pleasanton, P.A., West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marrett W. Hanna, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, J.
Edward Marreel, an Internet user, pled guilty to one charge of computer child exploitation. On appeal, Marreel argues that his verified motion to dismiss the charge on the grounds of entrapment should have been granted. Because the trial court correctly concluded that there was no improper inducement by law enforcement to cause Marreel to commit the crime and that, in any event, Marreel was predisposed to commit the offense, we affirm.
The Computer Pornography and Child Exploitation Prevention Act of 1986 provides in part:
(3) CERTAIN USES OF COMPUTER SERVICES PROHIBITED.Any person who knowingly utilizes a computer on-line service, Internet service, or local bulletin board service to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit any illegal act described in ... chapter 800, relating to lewdness and indecent exposure ... commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 847.0135, Fla. Stat. (2000)(emphasis added). Section 800.04(1)(a), Florida Statutes, prohibits oral, anal, or vaginal sexual activity with a person under the age of sixteen. The statute further prohibits the touching of a child in a lewd or lascivious manner or having the child touch the perpetrator in this way. See § 800.04(5)(a), (6)(a). A lewd or lascivious act under chapter 800 has been defined as "an unlawful indulgence in lust, eager for sexual indulgence." Chesebrough v. State, 255 So.2d 675, 678 (Fla.1971).
On July 10, 2001, special agent Don Condon of the Florida Department of Law Enforcement monitored an America Online (AOL) chatroom entitled "Married Wants Affair," while posing as a fifteen-year-old girl named "Kelly." While in the chatroom, Condon received an instant message from appellant:
[Appellant]: Hi Kelly, how are you today?
[Condon]: pretty kewl. how bout u?
[Appellant]: Pretty good. Where are you today?
[Condon]: fort lauderdale. how bout u?
[Appellant]: West Palm.

*602 [Appellant]: So, are you married?
[Condon]: kewl. asl [age, sex and location]?
[Appellant]: 34m[1]
[Condon]: too young to be married
[Appellant]: How old?
[Condon]: 15
[Appellant]: Oh, very young. So why are you in the married/affair room?
[Condon]: curious I guess
. . . .
[Condon]: got a pic?
[Appellant]: No, sorry. You?
[Condon]: no. PARENTS!!! AHHH!!! need I say more
. . . .
[Appellant]: Yeah. So looking for older guys?
[Condon]: I just think they're more together, ya know
. . . .
[Appellant]: So are you looking for just a sexual relationship?
[Condon]: ... maybe if I found the right guy
. . . .
[Condon]: ... You seem like a nice guy. How come your [sic] in this room?
[Appellant]: Well, like I said I was hoping to meet someone.
[Condon]: hey you met me!
[Appellant]: Not yet. I mean in real.

[Condon]: we could if you wanted to maybe
[Appellant]: You know ... an affair ... Yeah, I'd like that.
[Condon]: ah huh. me too I think
. . . .
[Appellant]: So, what would we do and where would we meet if we both agreed?
. . . .
[Condon]: ... all I want is for you to be honest with me. so I know [what] to expect cause you'd be my first
. . . .
[Appellant]: Ok, I'll ask you
Is a kiss too far?
[Condon]: No. that's okay with me ... and then
[Appellant]: Maybe some touching. Is that too far?
[Condon]: No. I don't think so, where would you touch me ...
[Appellant]: Wherever you like!
[Condon]: lol [laugh out loud]
[Appellant]: You have some ideas?
[Condon]: right now i'd like to hear them from you
[Appellant]: Well, let's just say I like to use my mouth.

[Condon]: to do what ...
[Appellant]: That is for your imagination. Let it run wild.

So, think you may want to meet me? (emphasis added).
Several weeks and many e-mails, online chats, and telephone calls later, appellant arranged to meet "Kelly" at a local McDonalds with the clearly expressed intention of the two engaging in some type of sexual activity.
*603 The trial court denied appellant's pre-trial motion to dismiss which was based on entrapment, stating:
Although the initial contact between the Defendant and officer occurred in a chat room for "Married Wants Affair," the officer established within the first two minutes that he was representing himself to be a 15 year old girl. The Defendant being aware of the age, continued to exchange messages with the officer and within fourteen minutes asked her if she was "just looking for a sexual relationship?."
The transcripts do not support a conclusion that the Defendant was induced or lured into a sexual conversation or that he was not predisposed to this type of activity. The Defendant has not met the initial burden under Munoz v. State, 629 So.2d 90 (Fla.1993), of establishing by a preponderance of the evidence that the government induced him to commit the offense charged. At this pretrial stage, the Court does not find that "entrapment as a matter of law" has been established.
We agree with the trial court that appellant has failed to establish by a preponderance of the evidence that he was induced by law enforcement to commit the offense. See Aidone v. State, 763 So.2d 1127, 1129-30 (Fla. 4th DCA 1999)(citing Munoz, 629 So.2d at 99). Appellant points out that, after the first chat, there were numerous subsequent conversations between the two which were initiated by "Kelly."[2] Appellant argues that "Kelly's" prodding for a sexual relationship in these later conversations induced him to speak about potential sexual conduct between himself and "Kelly." We disagree. Inducement cannot be found by prompting or creating an opportunity:
Neither mere solicitation nor the creation of opportunities to commit an offense comprises inducement.... Rather, inducement refers to government conduct that persuades a person to turn "from a righteous path to an iniquitous one."
United States v. Gifford, 17 F.3d 462, 468 (1st Cir.1994) (citations omitted). Inducement entails some semblance of "arm-twisting," pleading, or coercive tactics. See id. Furthermore, when the later conversations occurred, appellant had already demonstrated his predisposition to commit the offense, and, by that time, Condon was simply trying to arrange a convenient opportunity to make the arrest.
In conclusion, there was no unlawful government inducement in the instant case. After appellant made contact with "Kelly" in the "Married Wants Affair" chatroom, she immediately told him that she was only fifteen years old. Upon learning "Kelly's" age, appellant was not deterred but continued to engage her in the idea of having an affair involving oral sex, touching, and possibly more. "Kelly" merely created an opportunity for appellant to attempt to lure or entice a minor to participate in sexual activities. There were no coercive tactics or "arm-twisting" on the part of law enforcement; appellant was already on the "iniquitous path."[3] *604 Gifford, 17 F.3d at 468. The fact that "Kelly" helped to keep the idea of an affair going by initiating some of the later contacts with appellant is of no moment. By the end of the first chat, appellant had already shown that he was "predisposed" and that, independent of the government's actions, he stood "ready and willing, without persuasion, to commit the offense." Munoz, 629 So.2d at 99.
Accordingly, the judgment on review is AFFIRMED.
GROSS and MAY, JJ., concur.
NOTES
[1] Marreel's birth date of July 29, 1962, listed in the arrest report suggests that he was actually thirty-nine at the time.
[2] In total, there were about forty-seven communications: thirty-three by e-mail, eleven via the chat rooms, and three phone calls. "Kelly" initiated approximately nineteen of the e-mails and seven of the chat sessions.
[3] We also reject appellant's argument that law enforcement engaged in egregious conduct in this case due to the numerous chat sessions, electronic mailings, and telephone contacts with appellant. Egregious conduct on the part of the police is only found where such conduct is "`so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" State v. Glosson, 462 So.2d 1082, 1084 (Fla.1985)(quoting United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)).