486 So.2d 673 (1986)
Sherry ALDERMAN, As Personal Representative of the Estate of James F. Alderman, Deceased, Appellant,
v.
WYSONG & MILES COMPANY, a Corporation, Appellee.
No. BD-481.
District Court of Appeal of Florida, First District.
April 10, 1986.
*674 Fred Tromberg, William C. Gentry and John A. Tucker of Bedell, Dittmar, DeVault, Pillans & Gentry, P.A., Jacksonville, for appellant.
James C. Rinaman, Jr. and Nicholas V. Pulignano, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellee.
SMITH, Judge.
Appellant Sherry Alderman appeals from an adverse jury verdict in favor of appellee in this products liability action. She contends that the trial court erroneously failed to instruct the jury on the inapplicability of contributory negligence by failing to discover *675 or guard against a defect as a defense to a strict liability action. Appellant also contends that the trial court erred in allowing appellee to introduce evidence of certain alleged industry-wide standards concerning safety and products design, and in sustaining appellee's objection to appellant's attempt to introduce evidence of subsequent remedial measures taken by appellee. Finding no reversible error, we affirm.
Appellant and her husband, James F. Alderman, who died prior to trial, filed an amended complaint alleging that James Alderman (hereinafter decedent) sustained serious, eventually fatal, internal injuries as the result of being crushed underneath a machine press brake manufactured by appellee Wysong & Miles Company (Wysong). The complaint sought recovery based upon theories of negligence, strict liability, and breach of an implied warranty of merchantability. In support of the strict liability theory, appellant alleged that Wysong's press brake was defectively designed in that it had a tendency to overturn due to top-heaviness.[1]
On the date of the accident, January 21, 1983, decedent was employed by Johnson's Crane Service of Jacksonville, Florida as a "rigger," a job entailing the removal and installation of heavy industrial machines and equipment. As part of his duties decedent  along with two other riggers, Phil Harbison and Butch Carter  was assigned to install a Wysong Model 150 press brake at another Jacksonville company, Metal Fabricators. This press brake, approximately nine feet high, twelve feet wide, and weighing 26,000 pounds, was initially delivered to the Metal Fabricators shop building by flatbed truck. It was then lowered by crane onto movable dollies. Lacking roof clearance to move the press brake to its final destination by crane, the Johnson's rigging crew began to push the press brake by hand, utilizing "come-a-longs" and chains to pull the press brake inch-by-inch. The riggers were able to change the press brake's direction of movement only by raising it on industrial jacks, then repositioning the dollies. According to Harbison and Carter the Johnson's rigging crew, including decedent, was aware of the top-heavy nature of press brakes in general, including Wysong's Model 150 press brake. Therefore, they attempted to keep the press brake level at all times during its installation.
The accident involving decedent and the Wysong press brake occurred subsequent to the riggers' successful maneuvering of the press brake to its final resting place in the Metal Fabricators Building. At this point, the riggers raised the press brake with two industrial jacks, and began to remove the dollies underneath the machine so that it could be lowered onto metal plates, and later welded to the floor. The riggers then lowered two sets of "leveling bolts," located on the press brake's foot pads, one and a half to two inches, to allow the press brake to be lowered onto the floor, after which time the industrial jacks would be removed. Harbison lowered the front, top-heavy, end of the press brake onto its resting place, and removed his industrial jack. However, when Carter attempted to perform the same actions at the press brake's rear, it toppled over onto decedent.
According to an instruction manual which accompanied the Wysong press brake, the leveling bolts were to be lowered only where the machine was to be set down onto a concrete floor, at which time the leveling bolts would be screwed into the floor in order to provide additional stability while the press brake was operated. The instruction manual did not suggest lowering the leveling bolts when the press brake was to be lowered onto sheet metal and welded to the floor. Harbison and Carter both testified that neither they nor decedent had read the aforementioned instruction manual. Harbison explained that because of their awareness of both the top-heaviness of press brakes and the existence *676 of numerous safe methods of moving such machines, riggers commonly did not read such instruction manuals.
Appellant sought to prove at trial that the Wysong Model 150 press brake was defectively designed in that its weight distribution between front and back rendered it unreasonably dangerous in all foreseeable uses due to its alleged tendency to tip over even when kept perfectly level. In support of this theory, appellant presented the testimony of Dr. Igor Paul, a professor of mechanical engineering at MIT. Dr. Paul testified that general engineering principles suggested that industrial machines be designed with a weight distribution, front to back, of no more than two to one, and a "stability ratio," described by Dr. Paul as the ratio between the height of a machine's center of gravity and the shortest distance of its base, of no more than three to one. Dr. Paul calculated that the Wysong Model 150 press brake had a weight distribution ratio of seven to one, based on his finding that the press brake's center of gravity was located thirteen inches from the front end of the machine. According to Dr. Paul, these characteristics of the Wysong press brake rendered it likely to topple over even when only slightly unbalanced; that being so, Dr. Paul opined, the press brake was unreasonably hazardous in all of its foreseeable uses. Dr. Paul suggested a number of feasible design alternatives which, he felt, would reduce this top-heaviness, including increasing the size of the machine's foot pads, moving the location of its leveling bolts forward, and providing explicit markings on the press brake to indicate proper jacking points. Finally, Dr. Paul suggested that the instruction manual accompanying the press brake should state more clearly the machine's instability.
In contradiction to Dr. Paul's testimony, Wysong produced the testimony of Joseph L. Schwalje and Chris Zeilenga. Schwalje, a consulting engineer and retired professor of engineering, testified that Wysong's Model 150 press brake was in compliance with applicable industrial standards concerning its stability and weight distribution, and thus was reasonably safe for all intended uses, including installation. Specifically, Schwalje calculated the press brake's weight distribution as two to one (two-thirds of the weight in front, one-third in back  "front" and "back" delineated by the machine's center of gravity), which Schwalje characterized as within the industry norm. He also testified that Wysong's instruction manual adequately described the safety hazards involved in installing the Wysong press brake since, according to Schwalje, installers of such machines were aware of the top-heaviness of press brakes. Accordingly, Schwalje testified, the Wysong press brake was not defectively designed, but met accepted industrial standards of construction and design.
Similar testimony was offered by Chris Zeilenga, a professional engineer employed by a competitor of Wysong in the press brake manufacturing industry. Zeilenga testified that Dr. Paul's term "stability ratio" was meaningless as a normative reference to a press brake's stability, but rather, was simply a statement of fact concerning the distances measured. Zeilenga further testified that, based on standards published by the American National Safety Institute (ANSI), it was the responsibility of persons who installed press brake to exercise due care in the installation of these machines, based upon their known instability.[2] Therefore, Zeilenga opined, the Wysong press brake involved in this litigation was not defectively designed. Furthermore, according to Zeilenga, the instruction manual Wysong provided with its press brake also met ANSI, as well as industry, standards concerning the manual's warning of the press brake's top-heaviness.
The jury, in a special verdict form, answered in the negative the question: "Did defendant Wysong and Miles Company place the press brake on the market with a defect which was a legal cause of damage *677 to plaintiff?" The jury likewise found no negligence on Wysong's part which was a legal cause of the accident. The jury was thus not required to (and accordingly did not) answer another question on the verdict form concerning the existence any negligence on decedent's part as a legal cause of the accident.
Appellant's principal point on appeal concerns the trial court's refusal to instruct the jury that the failure of decedent or his co-riggers to discover or guard against the possibility of the Wysong press brake's alleged design defect was not a legal defense to a strict liability claim.[3] Appellant asserts that the law as reflected by the requested instruction is well recognized in Florida, citing West v. Caterpillar Tractor Company, Inc., 336 So.2d 80, 90 (Fla. 1976), and Cassisi v. Maytag Company, 396 So.2d 1140, 1152, n. 26 (Fla. 1st DCA 1981). Appellant argues that the trial court's denial of her requested jury instruction, or alternative request for a special verdict form requiring the jury to state whether or not they found such a failure of discovery to be the legal cause of appellant's damages, misled the jury into believing it could find that a design defect in the Wysong press brake was not the legal cause of appellant's damages if it determined that the accident was caused by the decedent's failure to discover and guard against the machine's top-heaviness. That is, appellant maintains the jury could have found that the press brake was defectively designed while at the same time finding that this defect was not the "legal cause" of appellant's damages, based on a legally improper finding that decedent's failure to discover the defect was the legal cause of appellant's damages.
In analyzing appellant's argument on this issue, we note initially that the failure to give a requested jury instruction constitutes reversible error where the complaining party establishes that:
(1) The requested instruction accurately states the applicable law,
(2) the facts in the case support giving the instruction, and
(3) the instruction was necessary to allow the jury to properly resolve all issues in the case.
Davis v. Charter Mortgage Company, 385 So.2d 1173, 1174 (Fla. 4th DCA 1980), citing Davis v. Lewis, 331 So.2d 320 (Fla. 1st DCA 1976), cert. denied 348 So.2d 946 (Fla. 1977). The mere failure to give a requested instruction, although erroneous, is not per se reversible error. Gallagher v. Federal Insurance Company, 346 So.2d 95 (Fla.3d DCA 1977), cert. den., 354 So.2d 980 (Fla. 1977). Instead, the reviewing court should reverse in such circumstances only where there is a reasonable possibility that the jury was misled in its resolution of a case by failure to give the instruction, which in turn depends on whether the omitted instructions addressed a material issue in the case that was not covered by the remaining instructions. Tilley v. Broward Hospital District, 458 So.2d 817 (Fla. 4th DCA 1984). Judged by these standards, we conclude that reversible error has not been demonstrated here.
Although appellant's requested instruction properly could have been given if the evidence warranted it, see West v. Caterpillar Tractor Company, Inc., supra, it is clear that, under the facts and circumstances of this case, there is neither a record basis for the requested instruction nor a showing that the instruction was necessary to properly resolve all material issues. The trial testimony unmistakably discloses that both decedent and his co-riggers had actual knowledge of the general propensity of press brakes to be top-heavy and, therefore, of the necessity of moving such machines with extreme care. More importantly, although appellant argues to the contrary, we conclude that it is inaccurate *678 to characterize Wysong's defense as focusing on a contention that the Johnson's Crane Service crew had a duty to discover the press brake's alleged defect. Appellee argues, more convincingly, that the defense actually raised at trial was first, that the machine was not defective; and secondly, that all three riggers knew, as part of their professional experience, of the press brake's top-heavy characteristics, but failed to exercise due care while assuming the risk involved in handling it during the installation process. The defense that the decedent assumed a known risk and failed to exercise due care for his own safety is unquestionably an appropriate one in the strict liability context. West, supra, at 90, 92; Tri-County Truss Company v. Leonard, 467 So.2d 370 (Fla. 4th DCA 1985) pet. for rev. den., 476 So.2d 676 (Fla. 1985). That defense finds ample support in this record. In fact, in the posture of this case as it went to the jury, we are inclined to accept appellee's contention that to have given appellant's requested instruction would have misled the jury by implying that they were free to find that the riggers were unaware of the press brake's top-heaviness, a finding which would have been at odds with the uncontradicted evidence presented below.[4]
It may be argued, in the abstract, that failure to give appellant's requested instruction could possibly have allowed the jury to believe they were free to make the concurrent findings of which appellant complains. The evidence actually presented, however, when considered in conjunction with the defense posture assumed by Wysong at trial, in our opinion prevents characterizing this possibility as anything beyond pure speculation. On this record, we find no reasonable possibility that this jury was misled in the manner suggested by appellant. Tilley v. Broward Hospital District, supra. Under the particular facts of this case, we cannot say that the trial court's failure to charge the jury as appellant requested either misled the jury or prejudiced appellant's right to a fair trial. That being so, the trial court's action did not constitute reversible error. American National Bank of Jacksonville v. Norris, 368 So.2d 897 (Fla. 1st DCA 1979), cert. den., 378 So.2d 342 (Fla. 1979).
Appellant next contends that the trial court erroneously allowed Wysong to introduce ANSI standards concerning both the design of press brakes and safety in their installation. Wysong had initially sought introduction of the ANSI evidence in an attempt to show that, contrary to Dr. Paul's testimony, no explicit stability and weight distribution standards existed in the press brake industry. Appellant's objection to introduction of this evidence was sustained, based upon Dr. Paul's admission on cross-examination that no such standards were recognized industry-wide. Subsequently, over appellant's objection, the trial court did allow Chris Zeilenga (Wysong's witness) to testify that, based on ANSI standards, it was the responsibility of installers of press brakes, such as the Johnson's Crane Service rigging crew, to utilize safe installation procedures based on the known instability of press brakes, and that accordingly, the Wysong press brake was not defectively designed. Appellant asserts that the ANSI standards referred to by Zeilenga were too general to constitute legitimate industry standards of conduct and, hence, this evidence was irrelevant. Alternatively, appellant contends, even had the evidence been admissible, the trial court erred in not instructing the jury that such evidence, while constituting some proof of the legal standard of care involved, was not prima facie proof that Wysong met the appropriate legal standard of care, citing Nesbitt v. Community Health *679 of South Dade, Inc., 467 So.2d 711 (Fla.3d DCA 1985).
We are of the view that the evidence relating to ANSI standards was properly admitted by the trial court, since evidence of industry standards provided by private, voluntary organizations such as ANSI is generally considered relevant in a strict products liability action on the issue of alleged design defects, as well as to impeach expert testimony contrary to the promulgated standards. Clement v. Rousselle Corporation, 372 So.2d 1156 (Fla. 1st DCA 1979), cert. den., 383 So.2d 1191 (Fla. 1980); Lollie v. General Motors Corporation, 407 So.2d 613 (Fla. 1st DCA 1981), pet. for rev. den., 413 So.2d 876 (Fla. 1982). Furthermore, although the trial court might properly have instructed the jury as to the evidentiary effect of this testimony, see Nesbitt, supra, we find any error in his failure to do so harmless under the circumstances of this case. The standards were relevant for more than one purpose, and appellant was allowed ample opportunity to present evidence and jury argument that the ANSI standards admitted into evidence were too nebulous to constitute proof of the applicable safety standards in the press brake industry. Dugan by Dugan v. Sears, Roebuck and Company, 113 Ill. App.3d 740, 69 Ill.Dec. 630, 447 N.E.2d 1055, 1057 (1st Dist. 1983), appeal after remand, 113 Ill. App.3d 740, 73 Ill.Dec. 320, 454 N.E.2d 64 (1st Dist. 1983).
Finally, appellant asserts that the trial court erred in preventing introduction of testimony concerning certain alleged remedial measures taken by Wysong subsequent to the date of the accident. The proffered evidence indicated that Wysong had lengthened the foot pads of its press brake from ten to fourteen inches, and had relabeled its parts list, which also contained installation instructions, as "parts list and instruction manual." Appellant contended that this evidence was relevant as an admission by Wysong that its Model 150 press brake suffered from instability greater than that tolerated in the industry, and to impeach the testimony of Schwalje and Zeilenga that no safety changes were necessary in either the press brake or instructions manual. We respectfully disagree.
Although this question was specifically reserved in our decision in Hartman v. Opelika Machine & Welding Company, 414 So.2d 1105, 1110 (Fla. 1st DCA 1982), pet. for rev. den., 426 So.2d 27 (Fla. 1983), we agree with the Fourth District Court of Appeal that the rule prohibiting introduction of evidence of subsequent remedial measures, codified as Section 90.407, Florida Statutes (1983), applies to strict product liability cases. Voynar v. Butler Manufacturing Company, 463 So.2d 409, 412 (Fla. 4th DCA 1985) pet. for rev. den, 475 So.2d 696 (Fla. 1985). Accordingly, since appellant by her own admission sought introduction of the evidence here proffered to show that Wysong's press brake was defectively designed and hence unsafe at the time of the accident, we find that the trial court properly excluded this evidence.[5] Even if we accept appellant's alternative contention that the evidence did not fall within the confines of Section 90.407, there was no abuse of discretion by the trial court in ruling the evidence inadmissible in view of Dr. Paul's admission that the foot pad changes would not have made the accident less likely to occur, thus reducing if not entirely eliminating the relevancy of such evidence to the issues before the jury.
Accordingly, the judgment appealed from is AFFIRMED.
MILLS and THOMPSON, JJ., concur.
NOTES
[1] At trial, appellant abandoned the breach of implied warranty of merchantability claim, and sought recovery based only on negligence and strict liability theories.
[2] Zielenga testified that he was a member of the ANSI committee which drafted the industry standards relating to press brake safety to which his testimony referred.
[3] Plaintiff's Requested Jury Instruction No. 19 reads: "However, on the claim that the product was defective and unreasonably dangerous by reason of its design, any alleged negligence on the part of James F. Alderman or the users of the press brake in failing to discover a defect in the press brake, or in failing to guard against the possibility of such a defect, is not a legal defense."
[4] As to appellant's contention that the instruction requested should have been given on the basis of her contention that the machine was more top-heavy than decedent thought it was, we note that the requested instruction as framed did not directly address this issue. However, the instructions actually given by the trial court were adequate, in our opinion, to direct the jury to consider the effect of this possibility in determining whether the machine was "unreasonably dangerous" to the user, and we fail to see how the jury could have been misled on this issue.
[5] As to the evidence concerning subsequent changes in Wysong's instruction manual, the proffered evidence would be irrelevant, as both Carter and Harbison testified without contradiction that neither they nor decedent read the original instructions manual, and were not in the habit of reading such publications, however denominated.