789 So.2d 1024 (2001)
Wilton James LANGSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-0172.
District Court of Appeal of Florida, First District.
April 20, 2001.
*1025 Nancy A. Daniels, Public Defender; Phil Patterson, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Elizabeth Fletcher Duffy, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
A jury found 24-year-old Wilton James Langston (Appellant) guilty of escape pursuant to section 944.40, Florida Statutes (1997); and resisting an officer with violence pursuant to section 843.01, Florida Statutes (1997). He was found not guilty of disorderly conduct. The trial court classified Appellant as an habitual felony offender, adjudicated him guilty of the two offenses, and sentenced him to concurrent terms of 38.2 months in prison. Appellant contends that the trial court reversibly erred by refusing to give the requested jury instruction on the lawful use of force to defend against an officer's use of unlawful or excessive force while making an arrest, where some evidence allegedly was presented in support of the instruction. See Taylor v. State, 410 So.2d 1358, 1359 (Fla. 1st DCA 1982) ("There is a right to a self-defense instruction when there has been sufficient evidence presented to support it.... A defendant is entitled to his requested self-defense instruction regardless of how weak or improbable his testimony may have been with respect to the circumstances leading up to the battery."); Ivester v. State, 398 So.2d 926, 930 (Fla. 1st DCA 1981) (self-defense is not irrelevant, but rather is quite relevant, to a prosecution for resisting arrest with violence). Concluding that it was reversible error not to give the instruction, we affirm the escape conviction, reverse the resisting with violence conviction, and remand for a new trial with directions to give the instruction.
The State's charges arose from events occurring on April 19, 1998. Count One of the information alleged that while being transported to a place of confinement and in the lawful custody of an authorized officer of the Bay County Sheriff's Department (Deputy Tony Walker) by virtue of having been arrested, Appellant escaped. Count Two alleged that Appellant had unlawfully, knowingly, and willfully resisted, obstructed, or opposed a law-enforcement officer (Deputy Walker) in the lawful execution of a legal duty attempting to quell a disturbance and/or arrest Appellant, by offering or doing violence to Deputy Walker by striking and/or kicking and/or wrestling *1026 him. Count Three alleged that Appellant had committed "such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them or did engage in brawling or fighting or did engage in such conduct as to constitute a breach of the peace or disorderly conduct," in violation of section 877.03, Florida Statutes (1997).
"A trial court's decision on the giving or withholding of a proposed jury instruction is reviewed under the abuse of discretion standard of review." Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998); Sheppard v. State, 659 So.2d 457, 459 (Fla. 5th DCA 1995). On appeal, the trial court's ruling on a jury instruction is presumed correct. See Shimek v. State, 610 So.2d 632, 638 (Fla. 1st DCA 1992). Appellant has the burden to demonstrate reversible error in the lower court's refusal to give the requested instruction. See § 924.051(7), Fla.Stat. (1997); Savage v. State, 156 So.2d 566 (Fla. 1st DCA 1963). "Each party has the right to have the court instruct the jury on the law applicable to the evidence under the issues presented." Gallagher v. Federal Insur. Co., 346 So.2d 95, 96 (Fla. 3d DCA 1977). A trial court's mere failure to give a requested instruction, if erroneous, does not constitute per se reversible error. See id. at 97. In Alderman v. Wysong & Miles Co., 486 So.2d 673, 677 (Fla. 1st DCA 1986), we set out the applicable test for resolving an issue like the one raised by Appellant:
[T]he failure to give a requested jury instruction constitutes reversible error where the complaining party establishes that:
(1) The requested instruction accurately states the applicable law,
(2) the facts in the case support giving the instruction, and
(3) the instruction was necessary to allow the jury to properly resolve all issues in the case.
See Davis v. Charter Mortgage Co., 385 So.2d 1173 (Fla. 4th DCA 1980). The first factor in the Alderman test is undisputed here.
Mindful of the axiom that a defendant is entitled to have the jury instructed on the theory of defense if any evidence supports that theory, see Gardner v. State, 480 So.2d 91 (Fla.1985), we must review the evidence offered at trial to see whether the second and third factors in the Alderman test were satisfied.
Deputy Walker, the State's witness, testified that he had 12 years' experience in law enforcement. While working off-duty security detail at a beach motel during the early-morning hours of spring break, he observed a loud, laughing crowd gathered outside around Appellant, who was dancing atop a rickety wooden picnic table in the motel courtyard. Sensing that Appellant's actions posed a safety issue, the deputy drove 40-60 yards across the street and parked his marked deputy sheriff's vehicle off the road in a well-lighted area no more than 25-30 feet from Appellant. No other law-enforcement officials were at the scene. The deputy testified that as he approached Appellant, who was obviously intoxicated, he directed Appellant to get down from the table. Appellant initially refused to comply, and when he eventually tried to get down, he slipped and fell to the ground. Seemingly embarrassed by his fall, Appellant became aggressive, loud, and profane. The deputy testified that according to standard procedure, he had elected to move Appellant away from the crowd, which was encouraging Appellant to be disorderly. When Appellant refused to cooperate, Deputy Walker grabbed him in an "escort position" to keep him from falling and to remove him *1027 from the immediate area. Using a "gentle touch," the deputy led Appellant down an open hallway. The procedure involved grabbing and holding Appellant's wrist and placing his hands on Appellant's shoulder as if to shake hands. The deputy testified that he had led along Appellant without pushing or pulling him. Although the deputy said that he would have given Appellant an opportunity to avoid arrest, he decided to arrest Appellant after Appellant refused to leave the crowd voluntarily, to calm down, and to comply with the verbal instructions.
Deputy Walker testified further that Appellant had become verbally upset as he was led away; eventually, he drew back and punched Deputy Walker in the chest, causing the deputy to conclude that any further communication with Appellant was impossible. Appellant called the deputy profane names. As the deputy tried to handcuff him, Appellant resisted with his arms and elbows and pushed, kicked, and fought. The deputy finally was able to get Appellant face-down on the ground and handcuff him behind his back. Picking up Appellant by the shoulder and arm, the deputy used the escort position to walk him to the patrol car. Meanwhile, Appellant continued pushing, pulling, swinging, hitting, and kicking to try to get away. Intent on taking Appellant to jail, Deputy Walker placed him in the back seat of the patrol car and locked the door. As the deputy approached the crowd again to check on another man who was being verbally disorderly, Appellant managed to exit the patrol vehicle and started running down the highway. With the help of another security officer, Appellant was quickly apprehended and returned to the patrol car as he tried to butt heads and kick the two men. Once pepper spray was administered, Appellant calmed down and was taken to jail.
When asked how he had been dressed at the time of the incident, Deputy Walker testified "it is hard to tell" because he could not remember. He had two types of uniforms, one of them "dress down," and occasionally wore plain clothes while working. He said that irrespective of his attire, he always had some kind of deputy identification (such as "Sheriff" written across the back of the shirt) and some symbol of authority (e.g., a badge). He opined that he probably had not been in plain clothes at the time because he wanted high visibility while on spring break patrol. When asked whether he had identified himself to Appellant as a deputy sheriff, Deputy Walker responded: "I did not go up, I'm a cop, get off the table, no, sir, I did not do that." He simply had said "Get off the table."
The other security person at a nearby hotel, Keith Johnson, testified that he had seen Deputy Walker placing someone in handcuffs and putting him into the patrol car. As Walker investigated another table dancer, Johnson saw the handcuffed individual exit the patrol car and attempt to get away. Johnson, who had worn a white polo shirt with "Security Enforcement" written on the back and his name and place of employment printed on the front, pursued and apprehended the man, who was under the influence of alcohol and became verbally abusive. When Johnson brought the man to the patrol car, Deputy Walker took over as the man swung his head and resisted getting into the vehicle. Johnson identified Appellant in court as the individual who had exited the patrol vehicle.
The defense's sole witness, 19-year-old Ashley Slater, testified that she is a long-time friend who was "hanging out" with Appellant at the beach on the morning in question. Their group had been drinking and partying. Slater said that while Appellant *1028 was dancing on the table, a casually dressed man approached, grabbed Appellant up by the arm and from behind after the fall from the table, and pushed him through the hallway. Appellant had started cursing at the man and "carrying on" and yelling for the crowd to call the cops. Slater testified that the man had not said anything as he approached the crowd, and she had not noticed anything about him to indicate that he was a law-enforcement officer. She said the man never identified himself as such, and she had not noticed whether he arrived by vehicle. Slater had not observed what happened after the man and Appellant went into the hallway until they came out a couple of minutes later, with Appellant handcuffed. For the first time then, Slater figured the man was an officer. She saw the man escort Appellant across the street to the back seat of a patrol car. Slater testified that subsequently, Appellant had exited the patrol vehicle, walked a couple of steps to the front of the vehicle, and given out his mother's number. At that point, the deputy had sprayed Appellant with mace.
The first factor in the Alderman test contemplates that the requested instruction accurately states the applicable law. See 486 So.2d at 677. The applicable law is set forth in the following 1997 statutes:
776.012 Use of force in defense of person.A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against such other's imminent use of unlawful force. However, the person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.
776.041 Use of force by aggressor. The justification described in the preceding sections of this chapter is not available to a person who:
(1) Is attempting to commit, committing, or escaping after the commission of, a forcible felony[1]; or
(2) Initially provokes the use of force against himself or herself, unless:
(a) Such force is so great that the person reasonably believes that he or she is in imminent danger of death or great bodily harm and that he or she has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or
(b) In good faith, the person withdraws from physical contact with the assailant and indicates clearly to the assailant that he or she desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force.
776.05 Law enforcement officers; use of force in making an arrest.A law enforcement officer, or any person whom the law enforcement has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force:
(1) Which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest;
(2) When necessarily committed in retaking felons who have escaped; ...

*1029 776.051 Use of force in resisting or making an arrest; prohibition.
(1) A person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer.
(2) A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, is not justified in the use of force if the arrest is unlawful and known by him or her to be unlawful.
Count Two charged Appellant with resisting with violence while the deputy was lawfully executing a legal duty. During the charge conference, defense counsel asked the trial court to instruct the jury on the lawful use of force to defend against the use of excessive force by an officer while making an arrest. The prosecutor claimed that the instruction was not appropriate in the instant case because there was no evidence whatsoever adduced of self-defense, and that to justify a self-defense instruction, there had to be evidence of "substantial character" that Appellant had acted in self-defense. The State asserted that the defense had offered nothing more than a bare allegation by a witness that excessive force was used in arresting Appellant. Citing Casey v. State, 651 So.2d 1230 (Fla. 2d DCA 1995), and noting the defense's objection, the trial court refused to instruct the jury on Appellant's theory of defense on the charge of resisting with violence.
The rationale behind the Gardner line of decisions is that once any trial evidence is presented to support an accused's theory of defense, the issue becomes a jury question, and the defendant has a right to a jury instruction. See Gardner, 480 So.2d at 92; Koontz v. State, 204 So.2d 224, 227 (Fla. 2d DCA 1967). Having reviewed the evidence offered by the State and the defense, we agree with Appellant that the facts in the case support giving the instruction, and the instruction was necessary to resolve all issues in the case. See Alderman, 486 So.2d at 677; Jackson v. State, 463 So.2d 372, 374 (Fla. 5th DCA 1985) (as self-defense under § 776.012, Fla.Stat., is an available defense regarding charges of battery and resisting arrest with violence, and as there was evidence of excessive force that the jury could have believed, convictions for these two offenses were reversed and remanded for new trial); Holley v. State, 423 So.2d 562 (Fla. 1st DCA 1982) (defendant is entitled to requested instruction on self-defense irrespective of how weak or improbable the testimony may have been with respect to the circumstances leading to the charged offense).
Appellant correctly notes that the lower court misplaced its reliance on Casey, 651 So.2d at 1230, a case in which the trial court had denied an instruction on self-defense. The opinion offers no facts concerning what the officer did while arresting Casey. One may infer that there was no testimony from which a jury could conclude that the officer had used excessive force in arresting Casey. In contrast, the instant case includes some evidence that, if believed by the jury, could have resulted in a "not guilty" verdict on the charge of resisting with violence. To Appellant's detriment, the jury was never instructed that they could acquit on those grounds. See Allen v. State, 424 So.2d 101, 102 (Fla. 1st DCA 1982) (citing Ivester for the proposition that an individual may defend himself or herself against unlawful or excessive force, even when being arrested). Whether Deputy Walker used excessive force in apprehending Appellant, and whether Appellant lawfully acted in self-defense, were jury questions. Given the evidence presented, we conclude that the lower tribunal reversibly erred by refusing *1030 to instruct the jury on the law of self-defense.
Accordingly, we AFFIRM the conviction for escape, REVERSE the conviction for resisting with violence, and REMAND for a new trial with directions to the trial court to give the requested instruction.
BARFIELD, C.J.; and ALLEN, J., concur.
NOTES
[1] A statute defines "forcible felony" to include "any other felony which involves the use or threat of physical force or violence against any individual." § 776.08, Fla.Stat. (1997).