# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-2039
_____

TONISHA LACHE CROWELL,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____


On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

September 18, 2019


OSTERHAUS, J.

   Tonisha Lache Crowell appeals a conviction and life sentence for murdering her baby. She seeks a new trial arguing that the trial court abused its discretion by giving deficient jury instructions that weren't supported by the evidence. We affirm.

## I.

   In October 2013, Ms. Crowell received treatment from a doctor for nausea and vomiting and learned that she was pregnant. Three months later, Ms. Crowell went to the hospital complaining again of stomach pain. She was told again that she was pregnant, and an ultrasound revealed that the baby was at thirty-nine weeks gestation. Ms. Crowell left the hospital, and two days later, she

gave birth to a baby in the privacy of her bathroom at home. After the birth, Ms. Crowell cut the umbilical cord and placed the baby in a trash bag with garbage in it. She cleaned up the blood in the bathroom and then discarded the trash bag with the baby outside. The baby remained in the trash bag for hours in forty-something-degree weather. Ms. Crowell then got help for herself from a roommate who didn't know she was pregnant. The roommate thought Ms. Crowell was bleeding from a bowel issue and took her to the hospital.

Upon arrival at the hospital, medical personnel discovered that Ms. Crowell had been there just two days before, while thirty-nine weeks pregnant, and that she was not pregnant anymore. Ms. Crowell denied at first that she was the same person. But after a couple of hours, she admitted to delivering a baby and leaving the newborn in a trash bag beside her home. The hospital alerted law enforcement and they found the baby still in the bag with her feet sticking out. Law enforcement officers and a paramedic testified to seeing the baby's chest rise and fall. But upon arrival at the hospital, the baby was pronounced dead. According to the death report, the cause of the baby's death was a combination of hypothermia and asphyxia. The baby had been stashed outside in the bag for about four hours.

The State charged and tried Ms. Crowell for first-degree murder. A jury heard the case and returned a general verdict of guilty. The trial court sentenced Ms. Crowell to life in prison without parole. This timely appeal followed.

## II.

This case involves the jury instructions given in Ms. Crowell's first-degree murder trial. We review the trial court's decision to give or withhold a proposed jury instruction for an abuse of discretion. *Kervin v. State*, 195 So. 3d 1181, 1182 (Fla. 1st DCA 2016). Whether an abuse of discretion occurred depends upon: "(1) whether the instruction given accurately states the applicable law; (2) whether the facts in the case support the instruction; and (3) whether the instruction given was necessary to allow the jury to properly resolve all issues in the case." *Id.* at 1182-83. We presume

2

that the trial court's ruling on a jury instruction is correct. *Langston v. State*, 789 So. 2d 1024, 1026 (Fla. 1st DCA 2001).

Under Florida law, the State can make out a first-degree murder case either by proving premeditated murder or felony murder. *See Dessaure v. State*, 891 So. 2d 455, 472 (Fla. 2004). The State's case here included evidence supporting both theories of first-degree murder and the court instructed the jury on both theories. Ms. Crowell asserts that her conviction and sentence should be reversed because the felony murder instructions referred to "caging" and "torture" of the victim, which she argues to be unsupported by the facts.

A felony murder occurs when an offender kills someone while committing one of the crimes listed in § 782.04(1)(a)2., Florida Statutes (2013). Among these crimes is "aggravated child abuse." *Id.* Aggravated child abuse occurs when a person: (1) commits aggravated battery on a child; (2) willfully *tortures*, maliciously punishes, or willfully and unlawfully *cages* a child; or (3) knowingly or willfully abuses a child causing great bodily harm, permanent disability, or permanent disfigurement to the child. § 827.03, Fla. Stat. (emphasis added). At the charge conference, defense counsel objected to the jury being instructed on these theories, except for child abuse causing great bodily harm or permanent disability. The trial court agreed to remove the "maliciously punishes" and "permanent disfigurement" language from the instructions but it left the rest. Ms. Crowell's argument is that the court committed reversible error by instructing the jury on the torture and caging theories.

Regarding caging, Ms. Crowell argues that this provision could only apply if there was evidence of "confining a child in some type of wire or bar boxlike structure or a small restrictive enclosure." *See Blow v. State*, 993 So. 2d 540, 541 (Fla. 2d DCA 2007), *receded from on other grounds by M.N. v. State*, 16 So. 3d 280 (Fla. 2d DCA 2009). Here, there was no such hardened-material, box-like, physical barrier, only a plastic bag. And according to Ms. Crowell, it is axiomatic that the bag, which was unsecured and failed to totally enclose her baby (officers saw feet protruding from the bag), wasn't a cage under the statute. Ms. Crowell argues also that there was no supporting evidence of

3

torture. She believes this provision only applies when there is evidence of a "level of brutality or extreme pain and suffering" or "extreme and sadistic conduct," which wasn't present here. *See Wheeler v. State*, 203 So. 3d 1007, 1009 (Fla. 4th DCA 2016); *Cox v. State*, 1 So. 3d 1220, 1224 (Fla. 2d DCA 2009).

We find neither argument sufficient to reverse Ms. Crowell's conviction and sentence. In the first place, a general guilty verdict will not be set aside "when there was an alternative theory of guilt for which the evidence was sufficient." *Mungin v. State*, 689 So. 2d 1026, 1030 (Fla. 1995) (citing *Griffin v. United States*, 502 U.S. 46 (1991)). Here, the jury's general guilty verdict did not specify what theory or theories it accepted. But the evidence supports alternative theories to those challenged by Ms. Crowell. As to the State's premeditated murder theory, for instance, a doctor told Ms. Crowell that she was pregnant four months before she gave birth. Ms. Crowell also visited the hospital and had an ultrasound two days prior to the baby's birth, which confirmed her late-stage pregnancy. Upon giving birth to the baby at home, Ms. Crowell admitted that she never checked to see if the baby was breathing or crying before depositing the baby headfirst in a trash bag and then abandoning the bag outside her home. She then lied about having a baby to both hospital personnel and law enforcement. This evidence supports the State's premeditation case and the jury's general guilty verdict.

Other evidence supports the State's felony murder theory that Ms. Crowell unlawfully killed her baby while committing aggravated child abuse. The instructions provided the jury with four avenues for finding aggravated child abuse, including aggravated battery and the knowing and willful commission of child abuse causing great bodily harm or permanent disability on the baby. There isn't a reasonable possibility that the jury relied on either the torture or caging theories of aggravated child abuse, which are the theories challenged in this appeal, without also finding that Ms. Crowell committed either aggravated battery, or child abuse causing great bodily harm. Again, the evidence showed that Ms. Crowell discarded her newborn outside in a trash bag, in forty-something-degree weather, where the baby remained for hours before dying of hypothermia and asphyxia. There was adequate evidentiary support for the aggravated battery and

4

knowing and willful child abuse theories of aggravated battery irrespective of whether the facts also supported the instructions regarding caging and torture. Thus, we find no reasonable possibility that the challenged instruction contributed to Ms. Crowell's conviction; any error was harmless.

That said, we find no error in the trial court's decision to give the caging and torture instructions because of the evidence supporting those instructions. A normal reading of the verb "cages," as used in the statute, means "to confine or keep in or *as if* in a cage." Cage, *Merriam-Webster Online Dictionary*, www.merriam-webster.com/dictionary/cage (last visited Aug. 28, 2019) (emphasis added). This definition easily fits the circumstances here where the infant was confined for hours headfirst in a trash bag. We understand that a plastic bag might not plausibly confine a healthy, older person as if in a cage, but an infant is different. "Aggravated child abuse is largely determined on a case-by-case basis rather than with bright-line rules as to what conduct does and does not constitute aggravated child abuse." *Cox*, 1 So. 3d at 1222 (citing *Herbert v. State*, 526 So. 2d 709, 712 (Fla. 4th DCA 1988)). "This flexibility is critical to allow for consideration of such factors as *the age of the victim*, the frequency of prohibited conduct, and other circumstances relevant to a particular case." *Id.* at 1222-23 (emphasis added). The infant could not be expected to free herself from life-threatening confinement in the trash bag, even if the enclosure wasn't made of the sturdy materials cited by Ms. Crowell. In fact, the baby was freed only when law enforcement officers arrived many hours later. Under these facts, we see no problem with the caging instruction.

We also don't think the felony murder instruction's use of "torture" was error requiring reversal of Ms. Crowell's judgment and sentence. This verb refers to conduct that "cause[s] intense suffering to" another person. Torture, *Merriam-Webster Online Dictionary*, www.merriam-webster.com/dictionary/torture (last visited Aug. 28, 2019); *see also Nicholson v. State*, 600 So. 2d 1101, 1103 (Fla. 1992). The evidence here indicated that the baby bled out, while being left for hours outside in the cold, after Ms. Crowell severed but didn't clamp the umbilical cord. The baby fought for her life for four hours, as first responders witnessed her struggle

to breathe before they could get to the hospital. The evidence showed that the baby was significantly hypothermic after all of those hours outside in the cold. In the meantime, Ms. Crowell played a cat-and-mouse game with hospital officials denying her pregnancy and the baby's existence. With this evidence of extended suffering by the baby before death due to Ms. Crowell's various actions and failures to act, the trial court did not abuse its discretion by including the torture theory in its felony murder instruction. *See Nicholson*, 600 So. 2d at 1103 (recognizing that willful torture may consist of acts of commission or omission that cause unnecessary suffering).

## III.

The judgment and sentence are AFFIRMED.

B.L. THOMAS and ROWE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Kathryn Lane, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee.