COHEN, J.
Justin Timothy Morgan appeals from his conviction of attempted lewd or lascivious exhibition following a jury trial. This case arose from a Craigslist advertisement posted by a detective with the Citrus County Sheriffs Office. The advertisement, placed in the “casual encounters” section of the website, was entitled “Opened Minded Mom looking to share intimate fun — w4m—38,” signifying a thirty-eight-year-old woman was looking for a man. The body of the advertisement stated: “Open Minded Mom looking to share intimate family fun.”
Morgan responded to the detective’s advertisement, whereupon the detective added a fictional twelve-year-old “daughter” into the equation. Morgan repeatedly expressed reservations about the daughter but did not terminate the dialogue. He indicated his desire to be intimate with the “mother” and kept hedging as to any involvement with the daughter, suggesting he wanted to start with the mother and see where it went from there and stating that the daughter could watch or participate if he felt it safe. At no time did Morgan agree to a sexual encounter with the daughter. Upon arrival at a location set up for the sting operation, Morgan was arrested.
In a four-count amended information, Morgan was charged with knowingly using a computer to lure the parent of a child to consent to the participation of that child in illegal sexual conduct,[1] traveling to meet a minor for illegal sexual conduct,[2] attempted lewd or lascivious battery on a child twelve years of age or older but less than sixteen years of age,[3] and attempted lewd or lascivious exhibition.[4]
*124 At trial, Morgan testified that he had only one sexual encounter before, which took place when he was eighteen with an older woman, and that he had never had sex with anyone from Craigslist.[5] On the night in question, he responded to multiple advertisements in an effort to have a casual sexual encounter, and the detective was the only person who replied.[6] Morgan noted that the advertisement’s title did not mention a child and asserted that the detective first proposed the idea that he be intimate — what he understood to mean having a sexual encounter — with the imaginary daughter. He disavowed any intention of having a sexual encounter with the child.
The jury found Morgan not guilty as to the first three counts, but guilty as charged on the attempted lewd or lascivious exhibition count. Morgan raises a series of issues on appeal, only two of which merit discussion. The first issue concerns the trial court’s denial of Morgan’s request for a jury instruction on his theory of defense — entrapment. Because the denial of that instruction under the facts and circumstances of this case was error, we reverse.
A trial court’s decision to give or withhold a requested jury instruction is reviewed for an abuse of discretion. Worley v. State, 848 So.2d 491, 491-92 (Fla. 5th DCA 2003). In criminal proceedings, however, that discretion is circumscribed by the defendant’s right to have the jury instructed on the theory of a valid defense. Id. at 492; Arthur v. State, 717 So.2d 193, 194 (Fla. 5th DCA 1998). The threshold for the giving of an instruction on a legally permissible theory of defense is low. To warrant the giving of such an instruction in a case where entrapment is being argued, the defense must show some evidence which suggests the possibility of entrapment. Once this threshold is met, regardless of how weak or improbable the evidence may be, the defense is entitled to the instruction. See Terwilliger v. State, 535 So.2d 346, 347 (Fla. 1st DCA 1988) (“It is not necessary that the defendant convince the trial judge of the merits of the entrapment defense because the trial judge may not weigh the evidence before him in determining whether the instruction is appropriate; it is enough if the defense is suggested by the evidence presented.”).
In denying the proposed standard entrapment instruction, the trial court effectively ruled that entrapment was not an available defense as a matter of law. The supreme court, in Munoz v. State, 629 So.2d 90 (Fla.1993), examined what was then a new legislative codification of the entrapment defense. In upholding section 777.201, Florida Statutes, against the argument that it violated due process, the supreme court stated, “Under the constitution of this state, juries, as the finders of fact, decide factually disputed issues and judges apply the law to the facts as those facts are found by the jury.” Id. at 100. If the factual circumstances are not in dispute and the accused establishes that the government induced him or her to commit the offense charged, and if the State is unable to demonstrate sufficient evidence of predisposition, then the trial court has the authority to rule on the issue *125 of predisposition as a matter of law and dismiss the charges. Id. That is precisely what occurred in Munoz.
In a pretrial motion, Morgan requested the trial court do the same and dismiss all pending charges based upon entrapment. The trial court properly denied the motion; however, that ruling was not dispositive of whether the defense was entitled to a jury instruction. In denying the proposed instruction, the trial judge relied upon Davis v. State, 937 So.2d 300 (Fla. 4th DCA 2006), the only ease cited by the State wherein the failure to give a requested entrapment instruction resulted in an affir-mance. In Davis, the trial court made a finding that the defense had not presented sufficient evidence to meet even the low threshold warranting the giving of an entrapment instruction. Here, the State concedes that Davis is factually distinguishable. Despite the fact that Davis approached the confidential informant seated in a car and offered to sell her cocaine, Davis claimed entrapment based upon the police officers having sent a provocatively dressed Caucasian female informant into an African-American neighborhood.
Once the defense presents any evidence suggesting entrapment, it is neither our role nor that of the trial court to weigh the sufficiency of that evidence or rule upon the likelihood of success of the entrapment defense. Section 777.201(2), Florida Statutes (2010), specifically provides that the issue of entrapment shall be tried by the trier of fact.[7] Unlike circumstances where the suspect is communicating with a person believed to be a minor, Morgan responded to an advertisement for a casual encounter with an adult female. When the law enforcement officer interjected the prospect of including a minor, Morgan expressed reservations and was equivocal in his responses. We recognize that most within our society would immediately terminate the conversation upon the mention of the involvement of a minor, and perhaps the jury will reject the defense. However, there is at least some evidence with which the defense could suggest that Morgan was entrapped. The failure to give a jury instruction on entrapment was error.
Because we are remanding the case for a new trial on the attempted lewd or lascivious exhibition count, we feel it appropriate to comment on the trial court’s somewhat unusual policy regarding the use of juror notes. Traditionally, whether the jury could take and use notes was a question within the trial court’s discretion. See Coates v. State, 855 So.2d 223, 225 (Fla. 5th DCA 2003). In 2007, however, the supreme court implemented several changes to Florida’s jury system.[8] In regard to juror note-taking, the supreme court determined it should be permitted and encouraged. In amending the rules of procedure, the court advised, “Such rules would clarify that juror notes may be taken with them from the courtroom to the jury room. These notes may be shared with other jurors, but must be destroyed after the verdict is delivered.”[9] The supreme court then authorized a new standard criminal instruction on note-taking, which provides in relevant part:
You will be provided with a note pad and a pen for use if you wish to take notes. *126 Any notes that you take will be for your personal use. However, you should not take them with you from the courtroom. During recesses, the bailiff will take possession of your notes and will return ; them to you when we reconvene. After you have completed your deliberations, the bailiff will deliver your notes to me. They will be destroyed. No one will ever read your notes.
If you take notes, do not get so involved in note-taking that you become distracted from the proceedings. Your notes should be used only as aids to your memory.
Whether or not you take notes, you should rely on your memory of the evidence and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than each juror’s memory of the evidence.
Fla. Std. Jury Instr. (Crim.) 1.6.[10]
Despite this rather clear directive from the supreme court, the trial court was under the belief that if it allowed the jurors to take their notes back into the jury room, they became evidence in the case. That is incorrect. The very purpose of allowing jurors to take notes is frustrated by a rule which prohibits their use during deliberations. As directed by the supreme court, following the rendering of a verdict, those notes should be destroyed, unread by others.
REVERSED and REMANDED for a new trial.
LAWSON, J., and MENDOZA, C.E., Associate Judge, concur.

. § 847.0135(3)(b), Fla. Stat. (2010).

. § 847.0135(4), Fla. Stat. (2010).

. § 777.04(1), Fla. Stat. (2010); § 800.04(4)(a), Fla. Stat. (2010).

.§ 777.04(1), Fla. Stat. (2010); § 800.04(7)(a)l.-3„ (b), Fla. Stat. (2010).

. Morgan was twenty-one years old at the time of the arrest.

. Morgan explained that he reviewed the advertisements through an application on his cell phone. The application allowed users to set criteria to receive notifications of specified advertisements. Morgan received notifications of advertisements in the casual encounters section posted by women ages eighteen to forty looking for men. Because the advertisement created by the detective matched Morgan’s criteria, the application sent him a notification.

. This rule applies unless it is an issue of entrapment as a matter of law as discussed in Munoz, 629 So.2d at 100.

. See In re Amendments to The Fla. R. Civ. P., The Fla. R. Crim. P., The Std. Jury Instructions in Civ. Cases, & The Std. Jury Instructions in Crim. Cases-Implementation of Jury Innovations Comm. Recommendations, 961 So.2d 178, 179 (Fla.2007). The changes to the rules and instructions took effect January 1, 2008.

.Id. at 180.

. The civil instruction is essentially the same. See Fla. Std. Jury Instr. (Civ.) 700.