CLARK, J.
Edwin Gennette appeals his conviction and sentence for one count of unlawful use of a two-way communications device to facilitate a felony, in violation of section 934.215, Florida Statutes. The conviction was based on Appellant’s plea of nolo con-tendere, entered after the trial court denied the defense’s motion to dismiss the charges.[1] Appellant’s plea reserved his right to appeal the denial of the motion to dismiss. In his motion, Mr. Gennette argued that his conduct was the product of entrapment by the government, as defined by section 777.201, Florida Statutes, and that he was thus entitled to dismissal as a matter of law. We agree, reverse the denial of the motion to dismiss and the resulting conviction and sentence, and remand to the trial court with instructions to dismiss the charge.
As a preliminary matter, although not raised by the parties at the motion hearing or on appeal, we consider whether Appellant’s entrapment defense was even cognizable by the trial court on a pre-trial motion to dismiss. As the dissent notes, section 777.201(2), Florida Statutes requires a defendant to prove, “by a preponderance of the evidence that his or her criminal conduct occurred as a result of an entrapment.” The statute further provides: “The issue of entrapment shall be tried by the trier of fact.” The dissent correctly stresses that ordinarily, juries are the triers of fact, tasked with resolving conflicts in the evidence after weighing the credibility and reliability of documents, witnesses and other sources of evidence. However, no disputes of fact or conflicts in evidence were presented to the trial court on the motion to dismiss or argued by the parties on appeal. Where the factual cir *275 cumstances of the case are not in dispute, the trial judge has authority to rule on entrapment as matter of law. Munoz v. State, 629 So.2d 90, 99 (Fla.1993); see also State v. Ramos, 632 So.2d 1078 (Fla. 3d DCA 1994) (although section 777.201(2) provides that issue of entrapment shall be submitted to trier of fact, determination of whether defendant was entrapped may be determined as a matter of law when factual issues not in dispute).
None of the critical factual circumstances of this case are in dispute. Section 934.214, Florida Statutes describes the elements of the offense of “Unlawful use of a two-way communications device” and Appellant did not contest the State’s allegations that he committed the acts described in that statute. The content and sequence of the government’s advertisement and ensuing e-mail chain were agreed upon by the parties, as was Appellant’s lack of any predisposition to commit any of the offenses charged.[2] The trial court’s denial of the motion to dismiss was not based on any resolution of conflicts in the documents or testimony presented by the defense, but was the result of the court’s application of the terms of section 777.201, Florida Statutes to the undisputed evidence. The State’s disagreement with the defense’s assertion that the facts established entrapment under the statute did not create a dispute of fact. Accordingly, the trial court correctly considered, on the motion to dismiss, whether the critical facts presented by the defense constituted entrapment under the language of section 777.201.
On the merits of this appeal, “[w]e review de novo a trial court’s order on a motion to dismiss.” O’Leary v. State, 109 So.3d 874, 876 (Fla. 1st DCA 2013).
Appellant was charged as a result of a police operation intended to apprehend persons seeking illegal contact with minors. To this end, government agents published an on-line (Craigslist) advertisement for apparently legal activity with a fictitious adult or adults: “Sisters looking for a hot night — w4m—19 (Pcola/Des-tin/PC).” Testimony at the motion hearing confirmed that “w4m” meant female looking for male, and the number 19 was to indicate the advertiser’s age. The ad did not suggest illegal activity.[3]
Appellant responded to the advertisement late on a Thursday night:
Appellant (11:24 p.m.): For real? nah, I don’t believe it, LOL can U prove me wrong? cute guy here, Trey
*276 “Amber” (11:42 p.m.): Hi Trey! Let see how cute!!! My lil sis is in town visiting me for the summer. She is 14, you ok with that?
The next morning, Appellant continued his e-mail correspondence with the law enforcement agent posing as the 19-year-old “Amber” as follows:
Appellant (10:21 a.m.): well I think she is a bit young, lol but depends on what you have in mind before i send my pic, are there any age requirements? lmao well the hell with it, ill send a pic anyway me and my pet possum.
“Amber” (3:44 p.m.): Nice pic! Why in the world do you have a pet possum? There are no age requirements here.
Appellant (3:59 p.m.): Well thank you.... I found my lil-bear in my backyard when she was just a baby and ive raised her .... she’s so spoiled and thinks shes a people, lol.now its your turn, lol.
The State maintained that Appellant’s response, in the third e-mail message of the chain, defeated his claim of entrapment because he readily accepted the government’s offer for sexual activity with a minor. To the contrary, Appellant’s e-mail shows only that he understood that a minor sister was visiting 19-year-old “Amber” for the summer. The agent’s question of “you ok with that?” and Appellant’s response “she is a bit young ... but depends on what you have in mind ... are there any age requirements?” was equivocal. Neither the agent’s nor Appellant’s messages at this point contained any reference to sexual activity or performance with either “Amber” or the minor. The early messages are simply too vague to constitute an offer and acceptance for criminal conduct.
In the eighth e-mail message, the agent sent Appellant a photograph of two young women posing as the fictional adult female and the minor. The agent’s subsequent messages described the photo as showing a “fun” weekend and plans to “get into some fun.” Appellant described his weekend plans as watching a movie at home and caring for his pet opossum, who was recovering from veterinary surgery. In the seventeenth message, Appellant invited “u” to his home where “we could figure out something to do if you like,” to which the agent replied “we host only.” Appellant then lamented that “u” would be unable to meet his pet possum and inquired “if I was invited over, what would u have in mind?” The agent repeated “fun,” and inquired “what do you have in mind for us?” While the agent used the plural terms “us” and “we” in her e-mails, Appellant consistently responded with “u” and “you,” making his intentions ambiguous about whether he was still contemplating contact only with “Amber” (the adult, as originally advertised) at this point in the conversation.
Appellant’s e-mails at this point continued to discuss his pet opossum and contained no words or phrases that suggested any sexual activity with either “Amber” or her “sister” or in the “sister’s” presence. Appellant’s only reference to physical features were to his pet’s “female parts,” because the recovering animal had recently been spayed. He sent a photo of the opossum to “Amber” and suggested “a ride in my talking Mustang.” When Appellant described his current activity as “just cleaning house,” the agent again stated “we are looking to have fun tonight.” The twenty-seventh e-mail in the exchange, sent by Appellant the Friday night after his response to the Craigslist advertisement, stated “maybe you can twist my arm, lol, I have some things to do tomorrow am, and since you cant come here ... but I can be persuaded, lol.” Four more e-mails were exchanged and both of the agent’s messages inquired about what Ap *277 pellant wanted “to do with us.” Appellant’s responses remained ambivalent about any particular activity with either female.
In the thirty-second e-mail, the agent tried to clarify the offer, stating “do u realize that its me and my lil sis.” Appellant responded: “im trying to keep things clean so to speak, lol until told otherwise, lmao but my car is fast, I can get somewhere pretty quick if needbe, just hope I don’t get a ticket.” The agent' continued to urge Appellant to provide details and assured him that “we like it dirty.” When Appellant’s responses continued to lack sexual content pertaining to the “minor,” the agent insisted that she needed details because “I need to prep her.” Appellant’s response “Prep her? what does that consist of?” shows that the agent’s offer including the minor is finally beginning to dawn on him. Appellant’s vague response caused the agent to demand in the fortieth message: “r u scared to talk about it[?]” Finally, in the forty-first message of the email chain, Appellant acknowledges the “underage sister,” asks “is that all consensual,” and the agent assures him that “everything is consensual.” The messages continued into the next day (Saturday). The agent responded to Appellant’s continued use of the singular, “you” by prompting him not to “leave out” the minor sister. From that point on, both the agent’s and Appellant’s messages increased in suggestiveness, including suggestions of sexual activity including the minor.
The defense of entrapment has evolved under federal and Florida law as both crime and its detection have increased in sophistication. Beginning with the opinion in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the courts have consistently recognized a policy disapproving use of the government’s police power to trick otherwise law-abiding citizens into violating the law. The power to use the “potentially dangerous tool” of deception to prevent and detect crime[4] is abused “when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.” Sorrells v. United States, 287 U.S. at 442, 53 S.Ct. 210. As stated in Sherman v. United States, 356 U.S. 369, 372-73, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), “[t]o determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.” However, subsequent courts in various jurisdictions differed regarding the relative weight to be given the “predisposition” of the accused versus the degree of government inducement or deception which might have caused the actions of the accused.
In 1987, the Florida Legislature adopted section 777.201, Florida Statutes, codifying the entrapment defense in this state.[5] The Florida statute addresses both the government’s actions to induce or encourage, and the status of the accused as “one who is ready to commit” the offense or not. Section 777.201 provides:
*278 (1) A law enforcement officer ... perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(emphasis added). The Florida Supreme Court has described the application of section 777.201 thusly: “The first question to be addressed under the subjective test is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence.” Munoz v. State, 629 So.2d 90, 99 (Fla.1993). Accordingly, a defendant must first show that the government agent induced or encouraged him or her to the extent that the defendant’s conduct was caused by the persuasive methods of the agent.
“Inducement” in the context of the entrapment defense has been defined as “persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.” State v. Henderson, 955 So.2d 1193, 1195 (Fla. 4th DCA 2007) (citations omitted). “Encourages” has not been further defined in an entrapment context by case law. Black’s Law Dictionary defines “encourage,” in reference to criminal law, as “[t]o instigate; to incite to action; to embolden; to help.” Black’s Law Dictionary (9th ed.2009). Merriam-Webster defines “encourage” as “to attempt to persuade: “urge” or “to spur on.”[6]
In the ease before us, the e-mail chain established, by a preponderance of evidence, that the government induced or encouraged Appellant, and due to his lack of predisposition, caused him by methods of persuasion to commit the offenses charged. As previously noted, the parties stipulated that Appellant was “a person other than one who is ready to commit” the offense. § 777.201(1), Fla. Stat. Throughout the e-mail chain, it was the agent who took the lead. It was the law enforcement agent who initially suggested the presence of a minor, though without any specific proposition of sexual or other criminal involvement between Appellant and the minor. When Appellant’s communications wandered to innocuous matters, it was the agent who repeatedly steered the conversation back to sexual activity with a minor. The agent redirected Appellant’s lack of focus on the minor by introducing and promoting the idea of participation by the minor in sexual activity with Appellant. It was the agent who coaxed and cajoled Appellant for more details and challenged Appellant’s reluctance by impugning his nerve and suggesting he was “scared.” The agent’s persistent urging to overcome Appellant’s obvious reluctance to commit or even describe illegal activity in his e-mail messages easily fits the statutory definition of entrapment— “induces or encourages” and “as a direct result, causes” Appellant’s eventual unlawful communications — as set out in section 777.201, Florida Statutes. The definitions of “induces” and “encourages,” including “instigation,” “persuasion,” “harassment,” “urging,” “spurring on,” and “incitement to action” all apply to the progression of *279 the government’s messages to Appellant in this case. Appellant’s eventual sexually suggestive communications pertaining to the minor occurred only after the agent “cast her ‘fishing expedition’ to bait, hook, net, and land him for” the offenses charged. See Futch v. State, 596 So.2d 1150, 1152 (Fla. 4th DCA 1992).
Because the preponderance of the evidence, as set out in the e-mail messages, showed the law enforcement officer’s methods of persuasion induced or encouraged, and as a direct result caused Appellant’s unlawful communications, the legal definition of entrapment set out in section 777.201, Florida Statutes was met and the motion to dismiss should have been granted. The law does not tolerate government action to provoke a law-abiding citizen to commit a crime in order to prosecute him or her with that crime.
The conviction and sentence are REVERSED and this cause REMANDED for DISMISSAL of the charges.
VAN NORTWICK, J., concurs.
OSTERHAUS, J., dissents.

. Appellant was originally charged with three additional felonies, but upon his plea to the communications device offense, the State nolle prossed the other three counts.

. Like the defendant in Farley v. State, 848 So.2d 393 (Fla. 4th DCA 2003), the State did not assert that Appellant had any previous contact with law enforcement or the court system in terms of investigations, charges, or convictions for any offense, let alone a crime involving sexual activity with a minor.

. Apparently this type of general advertisement is a common practice by law enforcement agents, who later suggest illegal activity to those who respond to the ad. See Morgan v. State, 112 So.3d 122 (Fla. 5th DCA 2013)(reversing conviction of attempted lewd exhibition for failure to instruct jury on entrapment). The court described the investigative operation and communication in that case thusly:
Unlike circumstances where the suspect is communicating with a person believed to be a minor, Morgan responded to an advertisement for a casual encounter with an adult female. When the law enforcement officer interjected the prospect of including a minor, Morgan expressed reservations and was equivocal in his responses. We recognize that most within our society would immediately terminate the conversation at the mention of the involvement of a minor, and perhaps the jury will reject the defense. However, there is at least some evidence with which the defense could suggest that Morgan was entrapped.
Morgan v. State, 112 So.3d at 125.

. Cruz v. State, 465 So.2d 516, 519 (Fla.1985), abrogation by statute recognized, Munoz v. State, 629 So.2d 90 (Fla.1993).

. While an entrapment defense where government action is so egregious that even a predisposed defendant’s due process rights are violated ("objective” entrapment) has survived the passage of section 777.201, Florida Statutes, no such predisposition of the defendant or egregious government action is at issue in this case. See Munoz v. State, 629 So.2d 90 (Fla.1993); Hernandez v. State, 17 So.3d 748 (Fla. 5th DCA 2009).

. Merriam-Webster, m-w.com, http://www. merriam-webster.com/dictionary/encouraged? show=0 & t= 1374525505 (last visited July 23, 2013). The "encourage” entry also lists "assure,” "reassure,” and "provoke” as related words. Id.