BENTON, J.,
concurring in part and dissenting in part.
I respectfully dissent from that portion of the decision affirming Mr. Seo’s convic *1191 tion, because I believe he was entitled to the jury instruction on entrapment that he requested. But, since a majority has voted to uphold the conviction, I concur in affirming on the state’s cross-appeal challenging the downward departure sentence. See State v. Davis, 141 So.3d 1230 (Fla. 1st DCA 2014).
There was, to be sure, evidence from which the jury could find that Mr. Seo was guilty of the charged offenses. But the rule regarding instructions on affirmative defenses is that in “determining the appropriateness of [an] instruction, the trial court should ‘examine the evidence in the light most favorable to the defendant to decide whether the necessary elements of the defense have been placed before the jury.’ ” Butler v. State, 14 So.3d 269, 271 (Fla. 1st DCA 2009) (citation omitted). If so, the defendant is entitled to a jury instruction on the defense.
“In criminal proceedings, ... [t]he threshold for the giving of an instruction on a legally permissible theory of defense is low. To warrant the giving of such an instruction in a case where entrapment is being argued, the defense must show some evidence which suggests the possibility of entrapment. Once this threshold is met, regardless of how weak or improbable the evidence may be, the defense is entitled to the instruction.” Morgan v. State, 112 So.3d 122, 124 (Fla. 5th DCA 2013). See also Terwilliger v. State, 535 So.2d 346, 347 (Fla. 1st DCA 1988) (“It is axiomatic that a defendant has the right to have the jury instructed on the law of entrapment when evidence is presented which tends to prove such defense. Once the defendant has shown some evidence which suggests the possibility of entrapment, the issue of entrapment must be submitted to the jury with the appropriate instruction. It is not necessary that the defendant convince the trial judge of the merits of the entrapment defense because the trial judge may not weigh the evidence before him in determining whether the instruction is appropriate; it is enough if the defense is suggested by the evidence presented.” (citations omitted)).
Law enforcement officers posted their ad (“Casual Encounters,” under the category “Women for Men”) in the personals section of the Craigslist website. This section of the website asked that no one under the age of 18 make use of it. Assuming the ad to which Mr. Seo responded was the one identified at trial by the officer posing as “Maddy,” neither the initial posting (“fresh yung fun — w4m (franklin/wa-kulla)”) nor the full ad (“lookin 2 find someone 2 show me the ropes”) stated that a reader responding to the ad would be corresponding with a child under the age of eighteen, in violation of the site restrictions.[3]
On October 15, 2011, at 6:41 a.m., Mr. Seo responded to the task force ad with the following e-mail: “Male FSU Student here, willing to provide you what you want. Without further ado, Wanna chat online sometime?” At 9:51 p.m. that night, the officer posing as “Maddy” responded: “would luv 2 how old r u?” At 11:00 p.m., *1192 Mr. Seo replied: “I am 24, You can get me at yahoo messenger, SN is aminocarboxylic.” At 11:30 p.m., the officer and Mr. Seo began a Yahoo Messenger exchange that lasted more than two hours.
During their “chat,” Mr. Seo asked several times for a picture of “Maddy.” At 12:52 a.m., “Maddy” asked if he had received the picture she had sent (in fact a picture of a 25-year-old female communications officer for the sheriffs office). After the picture reached him, Mr. Seo wrote “Maddy” that she was “quite beautiful,” and that he “bet a lot of boys wanna ask you out.” “Maddy” responded with “not really not much experience ... .lookin to learn.” Mr. Seo asked, “Well, is there anything I can help you with? Possibly? I don’t think I can’t even touch you but I can tell you what I know since I can be within 10 miles radius of you.” “Maddy” responded “well tell me wat u would do?” At that point, for the first time, Mr. Seo began discussing sexual acts. When he later said ‘Well, we can def hang out for sure[.] Just chill together, it will be an experience for me as well. Two bored people can hang together,” “Maddy” responded “i dont just want to chill boo.”
At 1:54 a.m., “Maddy” gave Mr. Seo the address of what purported to be a private home in a Tallahassee neighborhood, rented by the Tallahassee Police Department, where the undercover operation was taking place. At 2:08 a.m., he sent “Maddy” a message to let her know he was outside in the driveway. At 2:15 a.m., he was arrested inside the garage at the house.
Mr. Seo testified that when he first responded to the ad, he thought he was corresponding with someone at least eighteen years of age because the ad was on Craigslist. He testified he had previously responded to ads on Craigslist and had never encountered anybody underage. He also stated that people on such websites “role play” because “you can be anyone you want on the Internet.” Specifically, he testified he was not concerned that he was communicating with a minor when “Maddy” mentioned being in the ninth grade because he “thought she was just role-playing.” He was concerned, however, when she said she did not even have a learner’s driving permit, he testified, so he again asked for a picture. He also testified that, until he received the picture (approximately one hour and fifteen minutes after he and “Maddy” began exchanging messages on Yahoo Messenger), he was not interested in meeting “Maddy” in person.
With the foregoing evidence in the record, trial counsel asked for the standard instruction on entrapment. Mr. Seo met his burden of presenting sufficient evidence in support of an entrapment defense to warrant a jury instruction on entrapment. He testified that law enforcement officers induced him to commit the offenses with which he was charged and that he lacked any predisposition to seduce a minor. Subjective entrapment is defined by statute:
A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
§ 777.201(1), Fla. Stat. (2011).
The first question to be addressed under the subjective test [for entrapment] *1193 is whether an agent of the government induced the accused to commit the offense charged. On this issue, the accused has the burden of proof and, pursuant to section 777.201, must establish this factor by a preponderance of the evidence. If the first question is answered affirmatively, then a second question arises as to whether the accused was predisposed to commit the offense charged.... On this second question, ... the defendant initially has the burden to establish lack of predisposition. However, as soon as the defendant produces evidence of no predisposition, the burden then shifts to the prosecution to rebut this evidence beyond a reasonable doubt.
Munoz v. State, 629 So.2d 90, 99 (Fla.1993). “The state may prove predisposition with evidence of ‘the defendant’s prior criminal activities, his reputation for such activities, reasonable suspicion of his involvement in such activity, or his ready acquiescence in the commission of the crime.’ ” Jones v. State, 114 So.3d 1123, 1126 (Fla. 1st DCA 2013) (citation omitted)).
There was no evidence that Mr. Seo had previously met a minor for the purpose of engaging in sexual activity, or that he had ever before sought out persons under the age of legal consent for the purpose of engaging in sexual activity with them. There is no evidence that he would have tried to get up with a person under the age of legal consent in the present case, but for governmental inducement. See Munoz, 629 So.2d at 99 (“[C]are must be taken in establishing the predisposition of a defendant based on conduct that results from the inducement.”); Farley v. State, 848 So.2d 393, 396 (Fla. 4th DCA 2003) (noting that the state’s assertion that the fact that Farley ordered the videos indicated he had a predisposition to possess child pornography “overlooks even the common connotation of the word ‘pre disposition,’ ” and that the “prefix preindicates that the disposition must exist before first contact with the government”).
“ ‘[T]he failure to give a requested jury instruction constitutes reversible error where the complaining party establishes that: (1) The requested instruction accurately states the applicable law, (2) the facts in the case support giving the instruction, and (3) the instruction was necessary to allow the jury to properly resolve all issues in the case.’ ” Truett v. State, 105 So.3d 656, 658 (Fla. 1st DCA 2013) (quoting Langston v. State, 789 So.2d 1024, 1026 (Fla. 1st DCA 2001)). The present case meets this three-part test. The majority opinion’s claim that Morgan is distinguishable is perplexing:
At trial, Morgan testified that he had only one sexual encounter before, which took place when he was eighteen with an older woman, and that he had never had sex with anyone from Craigslist. On the night in question, he responded to multiple advertisements in an effort to have a casual sexual encounter, and the detective was the only person who replied. Morgan noted that the advertisement’s title did not mention a child and asserted that the detective first proposed the idea that he be intimate — what he understood to mean having a sexual encounter — with the imaginary daughter. He disavowed any intention of having a sexual encounter with the child.
Morgan, 112 So.3d at 124 (footnotes omitted). It could not be clearer that Morgan, like the appellant here, defended in part on the basis that he had no intention to engage sexually with a minor.
*1194 That the requested entrapment instruction (the Florida-Supreme-Court-approved standard entrapment instruction) accurately reflects the law is not in dispute. Because Mr. Seo introduced evidence from which the jury could find he was entrapped, the instruction he sought was appropriate, and necessary to allow the jury to evaluate one of the main issues in the case properly. His version of the facts supported giving the instruction. Mr. Seo presented evidence that, if accepted by the jury, would establish that officers induced or encouraged him to engage in conduct constituting crimes which he was not predisposed to commit.
This was not a case in which the defendant set up an alibi or “denied under oath the acts constituting the crime that [was] charged.” Wilson v. State, 577 So.2d 1300, 1302 (Fla.1991) (affirming refusal to give instruction on entrapment where defendant maintained somebody else had committed the crime). On the contrary, the appellant never denied driving to meet “Maddy,” apocryphal though she proved to be. See Mathews v. United States, 485 U.S. 58, 62-63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (noting that “a valid entrapment defense has two related elements: government[al] inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct” and holding that “even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment”); Wilson, 577 So.2d at 1302 (“ ‘Asserting the entrapment defense is not necessarily inconsistent with denial of the crime even when it is admitted that the requisite acts occurred, for the defendant might nonetheless claim that he lacked the requisite bad state of mind.’ ” (quoting W. LaFave and J. Israel, Criminal Procedure § 5.3, at 154-55 (1985))); Medina v. State, 634 So.2d 1149, 1151 (Fla. 4th DCA 1994) (concluding Medina had the right to an instruction on entrapment when “he admitted that he committed the acts that resulted in the drug deal, even though he denied knowing that the deal was going down when it did”); Terwilliger, 535 So.2d at 347 (“Even a defendant who denies one of the elements of the offense for which he is charged is entitled to an entrapment instruction.”).
There was no question that Mr. Seo drove to a residential neighborhood hoping for a sexual encounter with the woman whose picture had been sent to him. The question was whether he was disposed to prey on girls under eighteen before law enforcement agents suggested it. This was a jury question as to which the defense was entitled to the jury instruction it asked for.

. The officer portraying Maddy testified she was "almost positive” that she had placed the ad to which Mr. Seo responded, including an initial posting that included "fresh yung fun— w4m,” but acknowledged that she posted "quite a few ads,” and could not remember the exact terminology in all of them. She testified that she posted some ads that just said things like "needs experience in Craw-fordville” without any reference to "young." Mr. Seo, a 24-year-old, full-time college student at the time of his arrest, testified that the Craigslist ad he responded to did not state either "yung fun,” or "show me the ropes.”